No. 21,482.

THE AULTMAN & TAYLOR MACHINERY COMPANY, *Appellant,* v.
P. P. JONES and SUE M. JONES, *Appellees.*

SYLLABUS BY THE COURT.

REPLEVIN—*Chattel-mortgaged Property—Written Agreements—Waiver
of Claim for Damages—Binding on Defendants.* In a replevin action
by a chattel mortgagee, *held,* on the special findings and admitted
facts, that certain written agreements, extending notes and chattel
mortgages and waiving all claims for damages arising out of the sale
and purchase of farm machinery, are binding upon defendants, and
the claim that they were signed by one of the defendants without
having read them, when he had an opportunity to do so and was not
prevented in any way by the other party, is of no avail.

Appeal from Kingman district court; GEORGE L. HAY, judge.
Opinion filed July 6, 1918. Reversed.

*Charles C. Calkin,* of Kingman, for the appellant.

*John H. Connaughton,* and *H. E. Walter,* both of Kingman,
for the appellees.

The opinion of the court was delivered by

PORTER, J.: The action was in replevin by the mortgagee
under several chattel mortgages to recover possession of cer-
tain farm machinery sold to the defendants, and other property
covered by the mortgages. The defendants gave a redelivery
bond and kept possession of the property. The answer set up
several counterclaims for damages, and alleged that certain of
the notes and mortgages were given in payment of a gas
tractor which failed to fulfill a warranty, by which defendants
were damaged in the sum of $1,500, besides expenses of over
$900 for repairs which plaintiff failed to furnish under its
agreement to make the machine comply with the warranty. It
was also alleged that defendants purchased from plaintiff a
secondhand steam engine, represented to be in good working
order, which was worthless, and that defendants were damaged
in the sum of $600. There was a further set-off pleaded be-
cause of the sale of a separator which it was alleged failed to
fulfill a warranty, causing damages in the sum of $750. The

reply alleged various waivers by the defendants of defects in the machinery and failure of the warranties, and, in addition, alleged that full and complete settlements in writing were made between the parties in which all controversies were fully settled, and renewal notes and chattel mortgages were given by the, defendants for all past-due indebtedness. Copies of the agreements for settlement were attached to the reply, which show that the defendants waived all claims or demands they might have against plaintiff by reason of the matters alleged in their answer. The jury returned a verdict for plaintiffs, and special findings allowing the defendants $1,350 damages on account of the gas tractor failing to fulfill its warranty; $600 damages on account of fraud and misrepresentation growing out of the sale of the steam engine; $750 because of failure of warranty in the sale of the new separator; and the further sum of $800 on account of repairs upon the gas engine. The plaintiff moved for judgment, notwithstanding the general verdict. The court overruled the motion and gave judgment in defendants' favor for the damages found by the jury. The plaintiff appeals.

Among the several notes given by P. P. Jones to the plaintiff was one for $156 for repairs. On November 23, 1912, he wrote to Mr. Brown, president of plaintiff company, at Mansfield, Ohio, complaining that he ought to be allowed a credit of $95 on this particular note, because of a certain magneto and coil which the Wichita office was asking him to pay for, and which he considered unjust because the magneto and coil were not satisfactory, and because the only reason the Wichita office had for refusing the credit was that he had not demanded payment before the year had expired since the magneto was purchased. In this letter he said:

"If you insist that this $95.00 for magneto and coil be paid I will pay it but it will be an unjust charge.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"I hope you will take a broad view of the matter as I have been an Aultman & Taylor booster, to try and balance the favor you done me last year in extending some of my payments, and which I will ask some of you again this fall but from the present outlook I will be in shape to square up with you in full next harvest, as I have 860 acres of wheat this fall and it all looks good. It is my intention to put a 12 ft. push binder on the front of the gas engine with a special hitch I am con-

structing and 4 8-ft. draw binders behind, cutting a 44-ft. swath in width that is more than I ever heard of any one else doing, but I'm satisfied I can do it.

"I have two inquiries from prospective customers, I suppose, one from Ills. one from California, wanting to know what I can do with the gas engine and what I think of it. I will not answer either until I hear from you.

"I am writing you direct and hope to receive a favorable reply."

Before he received any reply to this, he was notified by Mr. Bowers, manager of the Wichita office, to come there to arrange for settlement and extension of his notes. In addition to the $156-note for repairs, he owed the company five separate notes. He went to Wichita on December 6th, and a separate agreement was made in writing respecting each of the five notes. The agreements were all alike, except in describing the note extended, and read:

"In consideration of the extension of the time of payment herein given, to the 15th day of July, 1913, of a certain note signed by P. P. Jones in favor of The Aultman & Taylor Machinery Co., dated March 25th, 1911, due January 1, 1912, for $450.00 with interest, same being part of a debt contracted for the purchase of a certain 30-60 A. & T. Gas Tractor, 121.20 paid, we hereby acknowledge that the said debt is justly due and owing, and also expressly acknowledge full satisfaction and settlement of all real or supposed counter claims, set-offs or other defenses whatsoever and waive the same as against the collection of said debt or other debts or any part or renewal thereof, as represented by this or any other notes given for said purchase or representing other indebtedness to The Aultman & Taylor Machinery Company, and we agree to pay said note promptly on above mentioned date and to pay any other said notes at maturity of each without any offset whatsoever."

Mr. Jones testified that because the letter he had written to the president November 23d had not been answered, the question of the $95 credit he was asking for on the repair note was left open and unsettled at that time. A few days later he received notice from Mr. Bowers that they had word from the president of the company in regard to the repair note, and asking him to come to Wichita again. He went on December 17 and signed the following additional agreement:

"In consideration of the Aultman & Taylor Machinery Co. allowing me a credit of $95.00 on my note No. 62709 given for certain repairs for my Thirty-Sixty Gas Tractor and the one GE 576 and one GE-247, I herewith waive any further claims for damages, defects, and shortages whatsoever. I have this day returned to the Wichita Branch one Remy

Magneto and Coil in accordance with Mr. Brown's letter of Dec. 10, 1912."

His contention at the trial was that these agreements were all fraudulently obtained, and that he was not bound by them, because he understood he was merely signing agreements to extend his notes. He testified:

"He told me the company had agreed to grant me an extension of my notes and give me more time and told me to sign these and they would help me through.

"Q. Did you read them? A. No, sir. Never read any of them."

On cross-examination he said:

"Q. What did he say to you? A. He told me this was the extension of my notes, giving me more time and all I read was the amount to see that the amount was correct. I didn't read that. I took Mr. Bower's word for that.

"Q. You could have read that if you wanted to? A. Yes, I could have read that. . . .

"Q. You had the opportunity to know what you were signing, did you not? A. Yes, sir."

As an explanation for his signing the agreement of December 17, he testified: "Bowers wrote that they would not give me any credit for the magneto unless I did sign it"; and that after he signed it he received credit for the $95. He also admits that when he went to Wichita on December 6 he intended to sign notes renewing his indebtedness (which of themselves would have constituted waivers of any claims he had for unadjusted repair accounts, or for damages). Aside from this, however, there was no evidence to take the case out of the general rule that a person is bound by his written agreement, and cannot avoid his liability thereon by his failure to read and know the contents of a paper which he signs, when he has no other excuse for not knowing than that he did not care to read the instrument. (See *Railway Co. v. Vanordstrand*, 67 Kan. 386, 73 Pac. 113, where the only excuse the plaintiff had for not reading a release was that he was "somewhat hurried," and authorities cited in the opinion; also, *Fontron v. Kruse*, ante, p. 32, 172 Pac. 1007, and cases cited in the opinion.)

The findings of the jury as to fraud in procuring these written agreements of settlement are as follows:

"8th. If you find that defendant was induced to sign any of the

Machinery Co. v. Jones.

written waivers or agreements of settlement that have been introduced in evidence, you may state specifically what particular one of said waivers or agreements was so induced by fraud and state fully the particular matters and things constituting said fraud which so induced said signing. Answer. In the plaintiff's agent stating to defendant that he was signing extension of time only, and the manner in which they were placed for signature of defendant.

"9th. If you find any of said waivers of agreements were induced by undue influence you may state what particular one and what said undue influence consisted of. Answer. None.

"10th. If you find that any of said waivers or agreements were induced by mistake or are affected by mistake, you may state what particular ones are so affected and what said mistake consisted of. Answer. None."

The jury found there was no undue influence used, and that the signing of the agreements was not induced by, nor affected by, mistake. The plaintiff cannot escape his liability by such a flimsy excuse as that he thought he was only signing extension notes. We fail to find any evidence in the record upon which to support a finding of fraud, and besides, the letters written by defendant to the plaintiff covering a period of several years, in which he repeatedly expressed his satisfaction with the machinery he had purchased, his own admissions that in 1914, long after the settlements, he paid $1,000 on the indebtedness and extended and renewed his notes again, all indicate that the defense urged at the trial was an afterthought. The court should have sustained the motion for judgment, notwithstanding the general verdict. Since the jury found the special value of the property which the defendants retained by virtue of their redelivery bond, there is nothing left to try, and the judgment will be reversed and the cause remanded with directions to enter judgment for plaintiff.