No. 35,905

Henry Leslie and Nettie Leslie, His Wife, *Appellants,* v. Paul Sherman, J. W. Kreider, Elmer Kaser and Don Kaser, Partners doing business as The Kaser Construction Company, *Appellees.*

(139 P. 2d 133)

Opinion filed June 12, 1943.

*Lester M. Goodell,* of Topeka, argued the cause, and *J. B. Wilson,* of Lawrence, *John L. Hunt, Margaret McGurnaghan, John H. Hunt* and *George M. Brewster,* all of Topeka, were on the briefs for the appellants.

*Edward Rooney,* of Topeka, and *George K. Melvin,* of Lawrence, argued

the cause, and *Jacob A. Dickinson, Edward Rooney, Jr.*, both of Topeka, *R. E. Melvin* and *Maxine B. Virtue*, both of Lawrence, were on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action by Henry Leslie and Nettie Leslie, his wife, to cancel certain instruments of record; to evict the defendant, Paul Sherman, and defendants Elmer Kaser and Don Kaser, partners doing business as the Kaser Construction Company, from certain lands previously leased by plaintiffs to the defendant, Paul Sherman; to enjoin defendants from removing rock and dirt therefrom; to require defendants to account to plaintiffs for the dirt and rock previously removed and for judgment against them of not less than five cents per cubic yard for the dirt and rock removed. Judgment was for defendants and plaintiffs appeal.

The interest of the defendant, J. W. Kreider, in the lawsuit will be set forth later. It may, however, now be stated no issue relative to his rights is presented for determination. While appellants say the controversy is primarily between them and the appellee, Sherman, the judgment if reversed would result in a complete cancellation of all future rights of appellee, the Kaser Construction Company.

By stipulation of the parties the Kaser Construction Company is continuing its operation of quarrying and removing rock during the pendency of the litigation and is paying all royalties due under its subcontract with the appellee, Sherman, to the clerk of the district court to be distributed pursuant to final judgment.

Appellants filed the instant action in June, 1942. The relief sought was based upon the theory a lease to quarry stone executed by the appellants to the appellee, Sherman, in 1929, was void for several reasons. It was, in part, alleged the lease was obtained by means of false and fraudulent representations made by Sherman and relied upon by appellants. The alleged representations, in substance, were:

Sherman had the necessary machinery to quarry stone for commercial purposes; the Atchison, Topeka and Santa Fe Railway Company had a track running across the premises and Sherman had a contract with that company to take the rock when quarried; plaintiffs were entirely ignorant of and had no knowledge of the royalty value of rock to a landowner, but Sherman claimed to have

such knowledge and represented to plaintiffs such value was one cent per cubic yard; each and all of these representations were known by Sherman to be false and untrue; plaintiffs had implicit confidence in Sherman and continued to believe all these statements until June 10, 1942; plaintiffs have waited patiently for Sherman to perform the purported contract; the fair compensation for rock or stone to be removed from the premises is not less than five cents per cubic yard.

The petition, in substance, also alleged:

The 1929 lease had automatically expired by its own terms; the lease was void at its inception in that the terms were not sufficiently definite and certain to constitute a binding contract; if the lease was ever valid it could not now be enforced because any rights thereunder have become barred by the five-year statute of limitations; the lease was duly recorded in the office of register of deeds of Douglas county.

The petition further, in substance, alleged:

On June 8, 1942, Sherman came to plaintiffs in great haste and asked them to sign what purported to be a communication to the State Bank of Lecompton, J. W. Kreider, president, Henry Leslie and Nettie Leslie, and represented to them the letter was for the purpose of authorizing payments, which were supposed to be made under the terms of the 1929 lease, to be made to the Lecompton State Bank, or J. W. Kreider, president, instead of directly to plaintiffs; plaintiffs did not read the letter but being willing the royalty payments should be so made signed the letter, being yet ignorant of the fraudulent representations which induced them to sign the 1929 lease.

The letter reads:

"1615 HARRISON STREET, TOPEKA, KANSAS,

*"To the State Bank of Lecompton,*                    JUNE 8, 1942.
      *J. W. Kreider, President,*
   *Henry Leslie and Nettie Leslie,*
*Lecompton, Kansas.*

"To clarify and have understood between us the situation existing regarding the lease dated April 15, 1929, between Henry and Nettie Leslie and myself, filed in book 125, page 77, register of deeds records at Lawrence, Kansas, I am writing this letter and memorandum agreement.

"Along the line of our conversation this morning, it is agreed between the undersigned as follows:

"1. That Paul Sherman shall pay the royalty specified in the lease direct to The State Bank of Lecompton in compliance with the requirement in the

lease concerning payment of Royalty, and such payment shall be payment to Henry and Nettie Leslie to The State Bank of Lecompton or to J. W. Kreider, whichever may be thereto entitled.

"2. That the royalty payments shall be made monthly about the 10th of the month following that in which the rock is sold.

"3. That all acts, transactions and assignments of or in connection with the lease mentioned above, to this date, including lease to Kaser Construction Company of Adell, Iowa, dated May 1, 1942, are hereby permitted and approved.                    Very truly yours,    PAUL SHERMAN.

June 8, 1942.—We hereby agree to the above.—J. W. KREIDER, HENRY LESLIE, NETTIE LESLIE."

The petition, in substance, further alleged:

Plaintiffs were entirely ignorant of the contents of the above letter when they signed it except as to its provisions concerning the place of making payments and the person to whom they were to be made; the 1929 lease was void at its execution for the reason that one cent per cubic yard for rock was so inadequate as to be unconscionable and unworthy of recognition in law and equity; Sherman knew these facts and plaintiffs did not until June 10, 1942; the 1929 lease was not binding and was automatically canceled for the reason Sherman at no time performed any of the obligations thereunder.

The answer of the defendant, Sherman, denied making any fraudulent representations and alleged all the representations he made in obtaining the 1929 lease were true. The answer further, in substance, alleged:

Plaintiffs ratified and affirmed the 1929 lease by a supplemental written contract in December, 1930, for the removal of dirt from the same premises, which later lease was recorded December 17, 1930, and plaintiffs also expressly ratified the 1929 lease by the agreement entered into June 8, 1942, a washing plant had been constructed on the premises at great expense and plaintiffs have waived and forfeited any right to challenge the validity of the 1929 lease and are estopped to assert and maintain the invalidity thereof; plaintiffs had full knowledge on June 8, 1942, of all matters and things concerning the transactions involved and fully understood the contents of the letter of June 8, 1942; by that letter they permitted and approved all acts, transactions, and assignments of or in connection with the original lease and are estopped by reason of these various facts from asserting the invalidity of the 1929 lease.

Plaintiffs' amended reply to the answer of Sherman, in substance, alleged:

Sherman had at all times since the execution of the 1929 lease promised plaintiffs he would fully perform the lease agreement but claimed he had been put to considerable expense in clearing the title to the premises; plaintiffs relied upon all of said statements; they continued to believe until June 10, 1942, that one cent per cubic yard was the reasonable market value of rock, but on that date discovered otherwise; Sherman read to them only that portion of the June 8, 1942, agreement which pertained to the distribution of royalty payments direct to the Lecompton bank; they had no knowledge of the agreement whereby Sherman had leased the premises to the Kaser Construction Company; they first learned of that agreement from Don Kaser on June 10, 1942; the lease of 1929 and the agreement of June 8, 1942, were both signed because of their reliance on the fraudulent representations set forth in their petition which induced them to execute the 1929 lease; both of those agreements should be canceled and set aside by reason of fraud practiced on them by Sherman.

The portion of the answer of appellee, Kaser Construction Company, now material to the appeal, in substance, alleged:

On May 1, 1942, they entered into a contract with Sherman to quarry stone on the premises (the contract was attached to the answer); by that contract they became subcontractors under the 1929 lease executed to Sherman; the original lease to Sherman was of record when they dealt with Sherman; the 1929 lease to Sherman was valid and they relied upon its validity; plaintiffs stood by and without objection permitted them to expend large sums of money in placing machinery on the premises for the purpose of processing rock; plaintiffs executed the instrument of June 8, 1942, whereby they specifically accepted and approved the contract entered into between these defendants and Sherman and plaintiffs are estopped from now denying the validity of those contracts under which these defendants are quarrying and selling rock from the premises.

The Kaser Construction Company denied all allegations contanied in the petition except such as their answer admitted.

Plaintiffs' reply to the answer of the Kaser Construction Company consisted of a general deniel of all allegations contained in that answer which were inconsistent with the averments of their petition and consented to the offer of that defendant to deposit all royalty payments with the clerk of the district court.

Upon the issues thus joined the action was tried. The oral testi-

mony of the parties with respect to fraudulent representations which appellants alleged induced the making of the 1929 lease was, in the main, contradictory, as was also the testimony concerning knowledge of appellants relative to the content of the letter of June 8, 1942. The trial court made what it termed conclusions of fact pursuant to the provisions of G. S. 1935, 60-2921. They were:

"1. The plaintiffs, Henry and Nettie Leslie, husband and wife, were in 1927, the owners of certain real estate in Douglas county, Kansas, situated near the Lecompton side tracks of the A. T. & S. F. Railway Company. The defendant, Paul Sherman, had for some time been closely associated with the management of the Santa Fe Railway Company and had some knowledge of the intended improvements to be made by that company. In 1927, Sherman went to the home of the Leslies in Lecompton and approached them with a view to securing a lease on the real estate above mentioned, for the purpose of quarrying and crushing rock thereon. He advised them at that time that he had efficient and adequate machinery to crush rock for commercial purposes, was equipped to handle the rock on their land, and had market therefor. His visit culminated in an agreement between the Leslies and him, which was reduced to writing, and is in evidence as exhibit 5, and by reference is made a part of these conclusions. Later, and in 1929, another lease to take the place of the one executed in 1927, was entered into between the same parties. It appears in evidence as exhibit 1, and is made a part of these conclusions by reference. Both of the leases were properly recorded.

"2. The Leslies do not appear to have had any knowledge concerning the rental or royalty value of land for rock exploitation purposes. Sherman probably had such knowledge. Sherman advised the Leslies that a cent a yard was a fair price for the rock on the land in question, and advised them it would make them between six and eight dollars per car. The lease provided for the payment of certain rentals until a crushing plant was established and these rentals were paid by Sherman to the Leslies. The Santa Fe Railroad contemplated making some track improvements which would require the use of considerable rock ballast and Sherman had an understanding with the railroad that he would supply the rock. About 1931, Sherman located a rock crusher on the plaintiffs' land with the idea of beginning rock crushing operations. Financial conditions impelled the Santa Fe to forego its contemplated improvements, and the rock crusher in question remained in place on the Leslie farm from the date it was placed there until some time in the spring of 1942. After placing the crusher on the Leslie land, Sherman ceased to pay any further rentals. He quarried no rock, and consequently, the plaintiffs have not received any money because of the rock crushing activities.

"3. At the time that the 1927 and 1929 contracts were entered into, a cent a yard would have been a fair royalty on the rock for the Leslies. The defendant, The Kaser Construction Company, had various contracts and subcontracts in connection with the construction of army camps. Sherman got in touch with the construction company and eventually assigned the Leslie contract to it, under the terms of which assignment he was to receive five cents a ton and/or yard.

"4. At or about the time the assignment of the contract by Sherman to the Construction Company was made, some question arose between them as to the authority of Sherman to assign the contract. In June, 1942, Sherman called on the Leslies and they talked over the situation at some length. Sherman, the next day after the conversation, prepared a letter addressed to the Leslies, which is attached to plaintiffs' petition as Exhibit B, and by reference is made a part hereof. Sherman took this letter to the Leslies in Lecompton and also to J. W. Kreider, who was interested in the real estate by reason of the fact he had foreclosed a mortgage thereon. Sherman read the letter to the Leslies and gave them each a copy of it and the Leslies had full opportunity to examine the letter and learn its contents before they signed. They accepted the situation detailed in the letter and acknowledged such acceptance by signing the statement thereon. Sherman did not pay the Leslies anything for signing the acceptance. The Kaser Construction Company installed rock crushing machinery on the Leslie land in May, 1942, and the Leslies knew of such fact. Very shortly after the signing of the acceptance above referred to, the Leslies learned from Mr. Kaser, a member of the Kaser Construction Company, the amount which the Construction Company was to pay Sherman for the rock quarried and crushed. This suit was filed soon after they obtained this information.

"In securing the contract with the construction company, Sherman did a good deal of running around, and probably expended a fair sum of money doing so. The Court is satisfied that the contract was the result of Sherman's business connections and his continued and persistent effort. Sherman acted in good faith, without fraud or unfairness, either expressed or implied, in connection with the execution of the 1927 and 1929 contracts with the Leslies.

"5. Sherman did not tell the Leslies what he was to get from the Construction Company for the rock.

"6. Probably the demand for the rock and the price paid by Kaser to Sherman was governed somewhat by the fact that the United States was at war.

"7. The Court finds generally for the defendants on the question of fraudulent representation."

The conclusions of law were:

"1. The writing of the letter by Sherman to the Leslies and the acceptance by them of the way the royalty money was to be paid and agreeing to the assignment to the Kaser Construction Company did not create a new contract between Sherman and the Leslies, and did not require Sherman to pay the Leslies any further consideration than that mentioned in the contract of 1929.

"2. There should be a judgment for the defendant, Sherman."

Appellants moved to set aside certain findings, one of which was the following portion of finding number 2:

"Financial conditions impelled the Santa Fe to forego its contemplated improvements."

Appellants insist there was no evidence that financial conditions were the cause of the failure of the Santa Fe to proceed with the

improvements. We find no direct statement that financial conditions caused the company to forego the contemplated improvements. It did, however, decide not to proceed with the improvements. Everybody, including courts, has knowledge of the general financial condition which existed in 1929. Furthermore, the real purpose of the finding was to show the Santa Fe had contemplated straightening out a bad curve in its line at Lecompton and that Sherman acted in good faith when he advised appellants concerning the contemplated improvements by that company and that he, in good faith, expected to supply rock to that company for ballast.

With respect to the entire subject of fraudulent representations which appellants alleged induced the signing of the 1927 and 1929 leases, it is sufficient to say appellants now concede the evidence relative to such alleged fraud was conflicting and that the question of fraud in the procurement of those leases has been resolved against them by the court's findings. They do, however, contend the instrument of June 8, 1942, was procured by fraud. That contention will be treated later.

Appellants complain particularly of that portion of finding number 4 that at or about the time the assignment of the contract by Sherman to the construction company was made some question arose between them concerning the authority of Sherman to assign the contract. It is claimed there was no evidence to support the finding. We think the evidence was ample to show a question had arisen concerning the validity of the 1929 lease, and that appellants were anxious, in order to get large-scale and immediate operation, to make it clear they were waiving any right they might have to cancel the 1929 lease and, in order to accomplish that purpose, they approved a sublease by Sherman to the Kasers. Sherman testified at length concerning his conversation with appellants in which he stated they advised him Kreider had, just prior to June 7, 1942, complained about the validity of the 1929 lease. There was evidence which disclosed the Kasers had been active on this lease to the knowledge of appellants as early as May 12, 1942. The Sherman-Kaser sublease was executed May 1, 1942. Kreider was concerned about the validity of the 1929 lease because he desired to make certain he would obtain the royalty payments to apply on appellants' mortgage debt. Here again the testimony was, in part, conflicting. The trial court had the right to believe the testimony of Sherman. Sherman's testimony, in substance, was:

Mrs. Leslie called him by telephone at Topeka on Sunday, June 7, 1942, and insisted that he come to their home at once; he did so and was advised by appellants that Karl Kreider, son of J. W. Kreider, had informed the Leslies he didn't believe the 1929 lease was good, the Leslies were anxious to make certain no question would arise concerning the validity of that lease because they feared Kreider might take advantage of them; appellants asked him (Sherman) to have an agreement drawn at once ratifying everything that had been done to date and to include a provision for the payment of the royalty money direct to Kreider; Sherman had such an agreement drawn by his attorney at once and took the instrument of June 8, 1942, to the home of appellants on that date; he offered both appellants a copy thereof; Mrs. Leslie asked that he (Sherman) read it to them; he read it to them in its entirety; they were greatly pleased and said, "Well, now, that is just what we want"; Sherman then signed it and both appellants signed it; Sherman and Mr. Leslie then went directly to see Kreider and Kreider read it and said to Mr. Leslie, "Now, Henry, is this what you want?" and Henry said, "Yes, it is, Mr. Kreider"; Sherman told them the Kasers were shipping a large scrubbing plant at great expense to wash the rock and to get it into acceptable condition; Mr. Kreider inquired about everything before he signed the ratification letter of June 8, 1942; Sherman gave one copy of the signed letter to Kreider and one to appellants; appellants had never said anything to him (Sherman) about misrepresentations until they filed this suit.

Appellants complained at the trial, and now urge, the court erred in finding appellants accepted the situation detailed in the letter of June 8, 1942, and acknowledged such acceptance by signing the statement therein contained. Appellants insist they had not seen and had no knowledge of the Sherman-Kaser contract of May 1, 1942, and hence could not be held to have accepted its terms. In the first place the finding that Sherman read the letter to appellants has evidentiary support as has also the finding that Sherman handed each of them a copy for inspection and that they had full opportunity to examine the letter before singing it. Clearly they are bound by its contents. (*Machinery Co. v. Jones*, 103 Kan. 339, 175 Pac. 151; *State Bank v. Grennan*, 116 Kan. 442, 444, 227 Pac. 530.) In it they said that on June 8, 1942, they permitted and approved all *acts, transactions* and *assignments* of or in connection with the lease dated April 15, 1929, including the lease to the Kasers dated

May 1, 1942. That letter, according to its own language, was written to Kreider, the only person who had complained concerning the validity of the 1929 lease, for the express purpose, among others, of having it clarified and understood that appellants were approving the 1929 lease. The letter in legal effect was tantamount to saying that whatever grounds or rights appellants might have to cancel that lease, which remained on record, they were not insisting upon them but on the contrary, were waiving them. This they, of course, had a right to do. (36 Am. Jur., Mines and Minerals, § 61; 40 C. J. 1002, 1026; *Schmidt-Blakely Coal Co. v. Hembree*, 134 Ark. 396, 205 S. W. 111.) Having waived such rights, they cannot now insist upon the invalidity of the lease. (*Brinkman v. Empire Gas and Fuel Co.*, 120 Kan. 602, 608, 245 Pac. 107; *Cowman v. Phillips Petroleum Co.*, 142 Kan. 762, 766, 51 P. 2d 988.) Appellants cite numerous cases involving the right to cancel a recorded lease which, for various reasons, has become subject to cancellation, but they do not apply here where the alleged right to cancel has been waived.

Appellants next assert they cannot be held to have accepted and approved the Kaser sublease because they had never seen it and were not conversant with its terms. The fact remains that while they did not ask to see that lease and did not inquire concerning its contents they nevertheless intended to permit and approve it. They permitted the Kasers to install the necessary machinery for large-scale operation under their sublease. Whether appellants legally approved terms of the sublease which were broader than the terms of the 1929 lease to Sherman need not be determined in the instant action. Appellants, however, certainly did approve the sublease to Kaser insofar as the sublease did not exceed powers and rights granted to Sherman in the 1929 lease.

Appellants complain the 1942 sublease undertook to grant additional powers and rights to Sherman in that such lease authorized Sherman to move rock onto appellants' land from another place and to crush it there and to receive five cents per cubic yard for the services without paying appellants any part of such remuneration. Appellants' petition for the cancellation of the 1929 lease and the 1942 sublease does not appear to have been predicated upon that ground nor did the petition allege Sherman had exercised such a claimed right. The evidence discloses no exercise of it. Appellees concede the sublease could not grant broader powers than the origi-

nal 1929 lease. We therefore have no actual controversy before us for determination on that phase of the lawsuit.

Appellants complain of the portion of finding number 4 to the effect that Sherman probably expended a fair sum of money in running around and securing the contract with the construction company. The complaint is there was no evidence to support the finding. Under circumstances previously narrated it is immaterial whether Sherman expended any money in making the sublease.

Appellants contend there was no consideration for the June 8, 1942, instrument and hence the 1929 lease and the 1942 Kaser lease have no validity. No consideration to appellants was necessary for the approval of the Kaser sublease but there was ample consideration for the approval of both leases. An adequate consideration was the assurance of immediate and larger operation by the Kasers, resulting in more royalty to apply on appellants' debt to Kreider for the purpose of saving their leased premises. Mrs. Leslie testified Sherman told them he wanted the Kasers on the lease because they had more and larger equipment and that Kasers would want forty cars of rock per day.

Appellants contend the court erred in finding the May 1, 1942, Sherman-Kaser contract constituted an assignment of the 1929 Sherman lease. We think the contention is good but that fact cannot alter the judgment. The Kaser contract was only a sublease and was denominated as a lease in the June 8, 1942, instrument. The 1929 lease to Sherman contained no restrictions against subletting. We know of no statutory prohibition in this state against the subletting of such a lease and we are advised of none. The only limitation on the common-law right of a lessee to sublet the premises is that they cannot be sublet to be used in a manner inconsistent with the terms of the original lease, or injurious to the premises. (32 Am. Jur., Landlord and Tenant, § 394.) It also has been held the right to relet obtains regardless of the existence of the covenant against assignment. (*M. Friedman & Co., Ltd. v. Sterling F. Co.*, 140 Cal. App. 685, 35 P. 2d 1064.) The 1929 lease provided, at least, for a restricted right of assignment. Appellants, by the instrument of June 8, 1942, having approved the 1929 lease as being in full force and effect, cannot now contend the sublease is invalid because they did not know its terms, which they made no effort to ascertain, but nevertheless blindly undertook to approve. The fact the sublease recited Sherman was to receive five cents per

cubic yard for rock from the Kaser Construction Company, his subcontractor, did not result in a use of the premises in a manner inconsistent with the 1929 lease or in injury to the premises.

Conclusion of fact number 7 was objected to and it will be treated presently in connection with another contention.

Appellants moved for judgment on the findings of fact and assign the overruling of that motion as reversible error. The motion was based upon legal contentions already treated. Touching the motion we may, however, further state the court, on motion of appellees, had set aside the following portion of finding number 2:

"Sherman advised the Leslies that a cent a yard was a fair price for the rock on the land in question, and advised them it would make them between six and eight dollars per car."

Appellees' motion was properly sustained. Sherman admitted he advised the Leslies in 1927 that one cent per cubic yard was a fair price for the rock in this quarry. His opinion took into account the large overburden and various other factors which he claimed were necessary to be considered in determining such value. According to Sherman's testimony he, however, did not advise appellants that price would make them $6 or $8 per car. Appellants testified Sherman had told them it would make them that amount per car. The rock weighed somewhat over one ton to the cubic yard and, at the rate of one cent per cubic yard, it would have required about 600 or 800 tons of rock to a car to produce $6 or $8 royalty per car, which was far more weight than they were permitted to load onto a single car. Sherman's testimony was he advised the Leslies they would make from sixty to eighty cents per car. The trial court did not ignore the fact that Sherman stated to appellants in 1927 that one cent per cubic yard was a fair royalty to the landowner. That fact was considered by the trial court in ruling on the motion as that price was expressly covered by another finding, namely, number 3.

Appellants earnestly urge paragraph number 7, in which the trial court found generally for defendants on the question of fraudulent representations, constitutes a conclusion and was contrary to the evidence. Upon trial of questions of fact by a court, our civil code authorizes the court to make conclusions of fact. (G. S. 1935, 60-2921.) Appellants insist the conclusion must yield to an inconsistent specific finding of the court that Sherman did not advise appellants he was receiving five cents per cubic yard for the rock under

the Kaser lease. The specific finding is not inconsistent with the general finding exculpating Sherman of fraud unless Sherman, under the circumstances of this case, was required to make known to appellants his profit under the sublease. Sherman made no representation to appellants in 1942 that he was receiving only one cent per cubic yard, or any other price, for rock from the Kasers. Manifestly, Sherman could not be expected to sublease to another without profit to himself and there is no principle of law which compels him to do so.

Appellants argue Sherman's failure to advise them he was receiving five cents per cubic yard for rock under his sublease constituted such fraud as to vitiate that lease. The contention is based upon the theory appellants were advised by Sherman in 1927, fifteen years prior to 1942, that one cent per cubic yard for rock constituted a fair royalty to the landowner and that appellants during the entire fifteen-year period continued to believe such fraudulent representations. It is, however, now conceded by appellants that the charge of fraud in the procurement of the 1927 and 1929 leases has been conclusively resolved against them on all points including the charge of fraudulent representations as to the royalty value of rock to the landowner. Can we as a matter of law, upon the record in this case, set aside conclusion of fact number 7? We do not think so. There was evidence a fair royalty *to the landowner* between 1929 and 1939 would not exceed one cent per cubic yard. There was additional testimony. Sherman testified, in substance: He considered one cent royalty to be paid *to the landowner* between 1927 and June, 1942, a good price and that he believed he was entitled to make a profit by subletting if he could do so; he told appellants a contract had been let by the government for the construction of the Topeka air base; he was trying to make a contract with the Kasers to supply the rock for the air base from this lease on a large scale; appellants expressed pleasure at the prospect and Sherman was offered ·a chicken dinner in celebration of the event.

Testimony of appellants' witnesses was that the value of royalty to the landowner between 1927 and 1929 was at least five cents per cubic yard and that such value had not fluctuated between 1927 and 1942. On the basis of that testimony appellants had over fifteen years within which to discover the identical fraud of which they now complain, namely, the true royalty value of rock to the landowner. That is the fact which appellants claim Sherman con-

cealed. At the end of the fifteen-year period appellants approved their original lease which fixed their price for rock at one cent per cubic yard.

In the able brief of counsel for appellants are collected numerous authorities from this and other jurisdictions on the subject of fraud and especially on that phase of the subject pertaining to concealment as a species of fraud. Characteristic cases relied upon are *Lindholm v. Nelson,* 125 Kan. 223, 264 Pac. 50; *Larrick v. Jacobson,* 139 Kan. 522, 32 P. 2d 204; *Serena v. Rubin,* 146 Kan. 603, 72 P. 2d 995; *Sledd v. Munsell,* 149 Kan. 110, 86 P. 2d 567; *Kershaw v. Julien,* 72 F. 2d 528.

This court is not unmindful of the well-established and wholesome doctrine laid down in those decisions and many other similar cases. The court does not now have the slightest inclination to detract from the full force of anything it has previously said upon the subject. The cases cited, however, are not authority for the proposition that a lessee must disclose to a lessor his profit under a sublease with a third party and our own search has disclosed no cases where courts of equity have canceled an original lease or a sublease for a lessee's failure to make that disclosure under circumstances either the same, or similar, to those existing in the instant case. We think the judgment of the trial court was correct and should be affirmed. It is so ordered.