No. 30,705.

J. M. RATCLIFF, Revived in the Name of CLARA P. RATCLIFF, Executrix, *Appellee,* v. W. S. GUOINLOCK, *Appellant.*

(12 P. 2d 798.)

Opinion filed July 9, 1932.

*Carl Van Riper,* of Dodge City, and *C. T. Parker,* of Hugoton, for the appellant.

*C. E. Vance, Clifford R. Hope* and *A. M. Fleming,* all of Garden City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action in ejectment. Judgment was for plaintiff. Defendant appeals.

Appellant leased a quarter section of land from appellee. The purpose of the lease was as follows:

"For the sole and only purpose of mining and operating for clays and earths, and building factories, plants and equipment, and railroad tracks, thereon to produce same and take care of said clay and earth products."

The lease contained the following clause:

"It is agreed that this lease shall remain in force for a term of one year from this date and as long thereafter as clays or earths are mined and produced from said lands by lessee as hereinafter provided."

The provision of the lease as to compensation was as follows:

"The said lessee covenants and agrees to pay to lessor for all clays or earths removed from said lands, the sum of ten (10) cents per thousand for all brick manufactured from the clay or earths mined from said land and sold by the lessee, and the sum of three (3) cents per ton for all clays and earths mined from said land and used for purposes other than for the manufacture of brick, the said sum due the lessor as royalty to be paid quarterly; provided, however, that if the total amount of annual payments due the lessor as royalty shall at any time after one year from this date be less than $160, then the lessee agrees to pay to lessor such sum of money as in addition to the amount of royalty due to lessor shall equal the sum of $160."

The lease was executed March 2, 1929. During the spring of 1929 appellant sunk two shafts for the purpose of prospecting for clay. These explorations disclosed the existence of two strata of clay— one red, the other buff. During the summer, fall and winter of 1929 a large number of tests were made for the purpose of ascertaining whether any of the clay discovered was suitable for making brick. At first these efforts were unsuccessful, but in December of 1929 a method was discovered by which the red clay could be made into brick. Efforts were continued till about April, 1930, to discover a successful method of making the buff clay into brick.

Soon after the lease was executed appellant shipped brick-making machinery to Hugoton, Kan. The value of this machinery was about $6,000. The cost of shipping it was about $800. Some time after May 1, 1930, this machinery was removed to the real estate in question here. Some time in July, 1929, appellants made a contract for the sale of some clay from the lease in question to be used in the drilling of oil and gas wells in the vicinity. For some reason, which we do not know, the person hired to haul this clay procured it from a lease other than the one in question, and no remittance was made to appellee under the terms of the lease. No clay was produced or sold from the lease in question until about May 13, 1930. From that date till June or July, 1930, about 2,000 tons of clay were removed.

Appellee did not know of the operations on his land after March 2, 1930, till June or July, 1930, when he came to Hugoton and discovered that the clay was being removed. Immediately upon dis-

covering this he instructed the hauler that he might continue hauling, but that the deliveries were to be made for him. Appellants informed the buyers of the clay that the deliveries were for him. Since that time the buyers have impounded the money due and it is being held awaiting the outcome of this litigation. Soon after the controversy arose appellants tendered all rentals and royalties due to appellee. This tender was refused.

This action resulted. The pleadings raised the issues about as they have been given here. Trial was to the court. There was no substantial dispute as to the facts. They were found by the court about as detailed here. The court found as a conclusion of law that the operations conducted by appellants were not sufficient to extend the lease beyond the second day of March, 1930, and the lease ended and ceased to be operative on that date.

Judgment was entered giving appellee possession of the real estate in question. From that judgment this appeal is taken.

It will be noted that no clay was sold from the lease till more than a year from the time the lease was executed. The provision as to the term of the lease is as follows:

"It is agreed that this lease shall remain in force for a term of one year from this date and as long thereafter as clays or earths are mined and produced from said lands by lessee as hereinafter provided."

Appellee argues that this was not an action to cancel a lease, but rather that the lease had expired by its own terms and that he was entitled to possession. Appellant argues that the case is controlled by the authorities on oil and gas leases, where it is held that in cases where a well was being drilled and was substantially completed, and the definite term of the lease had expired, equity would relieve the tenant of any attempted termination of the lease by the lessor. (See 43 L. R. A., n. s., 851.)

In this case all the work that had been done within the year was merely exploratory. In order to hold that this was sufficient to extend the life of the lease past the term expressed by its terms it would be necessary to hold that what was done constituted the producing of clay or earth from the lands described. When the lease was executed it evidently was the idea of both parties that a year was sufficient time to carry on the exploratory work and get the business of brick making or the production of clay under way. In fact, from the findings of fact it appears that but for the lack of attention on the part of appellants some clay would have been pro-

duced from the lease in question during the year. When the year had passed for which the lease had been executed no clay had yet been produced. This court has held that in leases for the purpose of producing oil or gas, where there was a clause in the lease similar to the one under consideration here, it was necessary that there should be actual production of oil and gas, not merely exploration activities in order to extend the term of the lease. (See *Howerton v. Gas Co.*, 81 Kan. 553, 106 Pac. 47; *Alfred v. Dennis*, 102 Kan. 403, 170 Pac. 1005; *Webb v. Croft*, 120 Kan. 654, 244 Pac. 1033.)

There appears to be no good reason why there should be a different rule where the lease contains the same provision but is for the production of clay.

The judgment of the district court is affirmed.