No. 33,466

ALBERT L. MEEDS et al., *Appellees,* v. GEORGE WELLS et al., *Appellants.*

(73 P. 2d 12)

Opinion
filed November 6, 1937.

*Don H. Elleman,* of Columbus, *A. L. Commons, H. E. Chandler* and *J. G. Austin,* all of Miami, Okla., for the appellants.

*F. W. Boss* and *Marc G. Boss,* both of Columbus, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to cancel a contract for prospecting and mining operations on certain real estate and to quiet title thereto, and from a judgment for plaintiffs some of the defendants appeal.

The plaintiffs were the owners of a certain tract of land in Cherokee county on which there were lead and zinc ores. Under date of January 25, 1935, they entered into a contract with defendant Wells, which, so far as need be noticed, provided that within ten days Wells or his assigns should begin prospecting operations and after commencing the same should carry them on continuously and in good faith and in a good workmanlike and minerlike way and manner for the full period, which was twelve months. We need not notice the specific provisions for the conduct and operation of mining operations under the lease. It was, however, provided that in the event defendant discovered ores in substantial or paying quantities and should mine and develop the same, and should fully comply with all agreements, stipulations and covenants of the contract, plaintiffs should execute and deliver to defendant a five-year mining lease. It was further provided that if defendant failed to perform and

comply with any of the terms of the contract in the manner and time required, defendant's right should become forfeited, etc.

On April 15, 1936, plaintiffs commenced an action against defendants. Their petition, among other things, alleged the above contract had expired by its terms, also that defendant had wholly failed to prospect by sinking drill holes to prove extent of the ore; that mining operations had never been carried on in good faith and continuously as provided by the lease, and that defendants had failed to mine the land in a good workmanlike and minerlike manner and had failed to keep the shafts and drifts well and securely timbered as required by the contract, and that defendant had failed to comply with the contract.

It may here be observed that defendant Wells, during the course of his operations under the contract, had assigned interests in the lease to various of his codefendants, and that they had assigned to other of the defendants. Defendants Green and Bushner disclaimed. Defendant W. L. Van Eck died and defendant Nellie Van Eck became the owner of his share. The defendants Wells, Harlin and Nellie Van Eck answered admitting execution of the contract and denying generally the allegations pertaining to the claimed forfeiture and noncompliance with the terms of the contract, and alleged that prior to the date of contract there had been prospecting and drilling operations on the land and that it had been thoroughly prospected, shafts sunk and ore knocked down and removed and milled, and that prior to January 25, 1935, the then lessee had abandoned the land and operations thereon or his lease had expired, and that the land was of no value for mining operations except only such profits as might be possible from a careful clean-up in the mine, with a possible chance of uncovering additional ore bodies; that Wells became interested in making the clean-up and it was agreed that one year would be sufficient time, and if ore should be found justifying further operations the owners would give him a lease; that the contract above referred to in more detail was prepared and before execution defendant Wells objected to the clause providing for drilling, and was advised that it would not be insisted upon; that defendant Wells signed the contract and immediately began work by cleaning and making the cribbing of the shaft safe, and thereafter began active mining operations which were continued with from five to twenty-five men; that the ground had not been timbered in previous operations and was of such nature that no timber was

necessary or proper in carrying on operations, and that although plaintiff Albert Meeds, agent of the plaintiffs, was frequently in the ground and a continuous observer of operations by defendant Wells, he made no demand therefor. The defendants further alleged their claimed present interests, and their operations under the contract, the payment of royalties to plaintiffs and that they had extended certain drifts and uncovered a considerable ore body showing a possible recovery of ore in quantity that made the mine desirable for further operations; that plaintiffs during the operations had made no claim of any violation of the contract nor any denial of defendant's right to a lease as provided in the contract. They alleged full performance on their part of each part of the contract not waived by plaintiffs, and that by reason of their uncovering an ore body justifying further mining operations they were entitled to specific performance of the contract and the delivery of the lease therein provided. They also alleged the provisions of the contract for surface drilling were placed in the contract by error, were never intended to be assumed by defendants and were waived by plaintiffs and should be stricken from the contract. They prayed for specific performance. Plaintiffs' reply was a general denial.

After a trial at which the parties adduced evidence in support of their pleadings, the trial court found the contract had expired, and that defendants had no right, title or interest in the premises by reason of the contract and that plaintiffs were entitled to have their title quieted, and further that defendants had failed to comply with the provisions and requirements in said contract for a mining lease.

Defendants' motion for a new trial being denied, they appeal. Their abstract contains no specification of alleged errors, nor does their brief contain any reference to the pages of the abstract, as required by the rules of this court. For these reasons appellees suggest the appeal should be dismissed. The abstract and appellants' brief indicate they were prepared by counsel residing without the state; appellees have had no difficulty in determining the appellants' complaints, and we shall therefore not drastically enforce the rule by dismissing the appeal.

Appellants complain the evidence of plaintiffs is insufficient to justify the judgment; that the judgment is not sustained by the admitted facts, and that the trial court erred in not decreeing specific performance of the provision for a mining lease to defendant Wells or his assigns.

A considerable part of appellants' argument is based upon their version of the facts. The judgment of the trial court having been for appellees, we must assume that all disputes in the evidence were resolved in favor of the appellees. Perhaps the principal dispute of fact centers around the question whether Albert Meeds was the agent of the plaintiffs other than himself and whether he agreed that appellant Wells need not prospect by surface drilling. Assuming that Albert Meeds was acting for himself and as agent for his coplaintiffs, and without discussing whether appellants' testimony that he waived compliance with the provisions of the contract tended by parol testimony to vary the terms of a written contract, the evidence of appellees was to the effect there was no agreement that the provision for prospecting by drilling need not be performed, but on the contrary it was insisted that it be performed. It is true there was no evidence the plaintiffs in writing demanded performance, but there is evidence Albert Meeds told Wells the contract called for drilling and he expected him to drill.

Appellants also contended that in their operations they had uncovered bodies of ore sufficient to justify mining. Although there was testimony to the contrary, there was testimony that Wells and his assignees had collected and removed from the mine a considerable amount of ore left from previous operations; that they had removed parts of pillars left in previous operations and that there had been no minerlike operation; that the shaft had not been properly repaired; that the equipment was poor and insufficient, and the appellant Harlin on cross-examination stated that up to about two weeks before he quit operations it wasn't a paying proposition. Other evidence tended to show that all Wells and his assignees did was principally to take out ore that was in sight and take it to the surface for milling. Appellants do not claim they ever did any prospecting by surface drilling. Our examination of the record discloses the judgment of the trial court is sustained by the evidence.

In examining appellants' contention that the judgment is not sustained by the admitted facts, we note appellants make a statement of "facts necessarily deducible from the pleadings and abstract" which entirely ignores the general finding of the trial court. In this statement the only facts set forth which our examination shows to be undisputed are that plaintiffs owned the land which had previously been mined; that the contract was made at a time when the property was in a state of disrepair; that appellants paid appellees

certain royalty moneys due under the contract; that Wells and his assignees never prospected by surface drilling; that no *written* demand for prospecting was made on Wells. Just why these facts compel any different conclusion than that reached by the trial court is not made to appear. Our examination of the record discloses no admission of fact by appellees which precludes their recovery in the action.

Appellants also contend they were entitled to a decree of specific performance requiring appellees to make, execute and deliver to them the mining lease mentioned in the contract. In this connection it is argued that no written demand for surface drilling was made, that appellees did not object to the manner in which appellants performed; that on termination of the time fixed in the lease, *i. e.*, one year, they did not move promptly; that appellants discovered ore in quantities sufficient to justify mining; that equity abhors a forfeiture; that therefore they should not be foreclosed of any right under the contract but should have the lease and the right to proceed under it. They rely principally upon *Cowman v. Phillips Petroleum Co.*, 142 Kan. 762, 51 P. 2d 988. Were all the facts resolved as appellants assume, they would be entitled to the lease and to proceed thereunder. The difficulty is the facts have been found against them. In addition to the evidence as above recited, it was also shown that before the end of the one-year term Meeds told Harlin the contract was about to expire and he expected possession, since they had failed to live up to the contract, but he would give them a reasonable time to remove their property. On March 10, 1936, Meeds orally notified Wells the contract had expired and he wanted possession, and Wells admitted that neither he nor Harlin had "done anything here on the job." As previously mentioned, the action was commenced April 15, 1936. Under all the circumstances we cannot say that appellees, as landowners and lessors, did not promptly assert their rights under the contract under consideration.

No good purpose would be served by a review of our decisions with respect to forfeitures of mineral or oil and gas leases, or contracts pertaining thereto. The appeal before us presents only questions of fact, which have been resolved in favor of the appellees. The judgment of the trial court is based on sufficient evidence and must be, and is, affirmed.