**HOME ROYALTY ASS'N, Inc. v. STONE et al.**

No. 4472.

United States Court of Appeals Tenth Circuit.

Oct. 31, 1952.

Jack N. Hays, Tulsa, Okl. (Eugene O. Monnet, G. Ellis Gable, and Charles P. Gotwals, Jr., Tulsa, Okl., and Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., on the brief), for appellant.

Bert J. Vance, Garden City, Kan. (Hutchinson, Vance, Hope & Fleming, Garden City, Kan., on the brief), for appellees.

Before BRATTON, MURRAH, and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

This was an action instituted by Elmer A. Stone and Hattie V. Stone against Home Royalty Association, Inc., to quiet title to a described tract of land in Finney County, Kansas. By answer, the defendant pleaded that it was the owner of an undivided one-half interest in and to the oil, gas, casinghead gas, and other minerals in the land; and by counterclaim, it sought to quiet title to such mineral interest.

The facts were stipulated. Plaintiffs owned all of the surface rights and one-half of the mineral rights in the land. Defendant claimed the remaining one-half of the minerals under a mineral conveyance from William T. Rigg and Agnes P. Rigg, his wife, to Home Royalty Association of Oklahoma, a trust estate, and a conveyance from Home Royalty Association of Oklahoma to defendant. The conveyance from Rigg and wife to Home Royalty Association of Oklahoma was dated June 26, 1928, and the habendum clause therein contained the provision "To have and to hold unto the said grantee for the period of twenty-one (21) years from the date, and as much longer thereafter as oil, gas, or other minerals are produced from such lands * * *" On April 27, 1949, the lessee of plaintiffs and the lessee of defendant, operating jointly, moved on a location and started assembling a rotary rig prior to the commencement of drilling. On April 30, the well was spudded in and drilling commenced; on May 6, the oil string of casing was run to 2585 feet; on May 23, cable tools were moved in and drilling commenced with such tools; on May 30, an electric log was run; on May 31, the well was drilled to its total depth of 2738 feet; on May 31, a 5½ inch liner was run and the well acidized; on June 2, the well was kicked off and completed as a gas well; on June 16, an open flow test was taken and the well indicated an open flow of 10,-514,000 MCF of natural gas per day; on September 6, a deliverability test was taken by the State Corporation Commission of Kansas and gas commenced flowing from

the well into the gathering system of Colorado Interstate Gas Company to whom the gas was marketed; and since September 6, the production of gas and the purchase thereof by Colorado Interstate Gas Company has continued. On May 26, 1949, an agreement was entered into by and between the lessee of plaintiffs and the lessee of defendant on one hand, and Colorado Interstate Gas Company on the other hand, to market production from the well to Colorado Interstate Gas Company. After completion of the well the purchasing company laid gathering lines to the well-head and commenced the collection of gas therefrom. And the period elapsing between June 16 and September 6, 1949, was a reasonable time between the completion of such a well and its connection to a gathering system of a gas purchaser.

The court concluded that the discovery of gas in paying quantities and the completion of the gas well within the primary term of the mineral conveyance were not sufficient to constitute production as used in such conveyance; that the well did not actually produce gas within the meaning of the term as used in the conveyance until it was connected to the pipe line after expiration of the primary term; and that all the right, title, and interest of the defendant in the property terminated on the last day of the primary term fixed in the conveyance. Judgment was entered for plaintiffs, and defendant appealed.

The judgment is challenged on the ground that gas was produced within the primary term of the mineral conveyance. It is said that the word "produced" means to bring forth; that gas had been released from the layers of earth confining it and brought to the well-head whence it poured forth; that the well blew in when the open-flow test was made; that the gas was ready for market and had been sold; that it was waiting only for the buyer to come and take delivery by laying the gathering lines to the well, all prior to the expiration of the primary term in the conveyance; and that therefore gas was produced within the meaning of the pivotal language in the habendum provision of the conveyance before the primary period expired. But it is the law in Kansas that under a mineral conveyance of this kind, the mere discovery of gas during the primary term is not sufficient to extend the rights of the grantee in the conveyance or those holding under him beyond the primary term. There must be actual production as distinguished from exploration and discovery of minerals during the primary term. Ratcliff v. Gouinlock, 136 Kan. 149, 12 P.2d 798; Tate v. Stanolind Oil & Gas Co., 172 Kan. 351, 240 P.2d 465.

It is contended earnestly that in this instance gas was discovered during the primary term of the conveyance; that the marketing of the gas began within a reasonable time after discovery and after the termination of the primary term; and that the two together constituted production within the meaning of the critical language contained in the habendum provision of the conveyance. To sustain the contention, strong reliance is placed upon Wilson v. Holm, 164 Kan. 229, 188 P.2d 899. That case was different. There oil was produced within the primary term of the conveyance but production was discontinued after the expiration of such term. The court said that the real question for determination was whether within the meaning of the language contained in the habendum clause of the conveyance, there had been such cessation of production as to result in a defeasance of the estate acquired and held by the grantee in the conveyance and those holding under him. And it was held under the facts presented that because of cessation of production after expiration of the primary term, the rights of the grantee and those holding under him were terminated. Appellant also relies strongly upon Christianson v. Champlin Refining Co., 10 Cir., 169 F.2d 207. The lease involved in that case was for the primary term of ten years and as long thereafter as the lessee produced oil and gas, or either of them, from the premises. But the lease further provided that, notwithstanding anything therein to the contrary, it was expressly agreed that if the lessee should commence drilling operations at any time while the lease was in force, the lease should remain in full force and its term should continue so long as such

operations were prosecuted and, if production should result therefrom, then as long as production continued. On the last day of the primary term fixed in the lease, the drilling of a well on the premises started, and such operations continued until a sour gas well in commercial quantities was brought in. From that time, diligent efforts were made to market the gas. The building of new pipe lines was necessary and difficulties presented themselves. But through the exercise of reasonable diligence, a purchaser was secured; the well was connected with a pipe line of the purchaser about fifteen months after the well came in; and thereafter the purchaser took and paid for the gas produced from the well. We said the general rule was that where production results from drilling operations and the operator is unable to market the product immediately for lack of an available market or of a pipeline connection, no forfeiture results if, by the exercise of due diligence on the part of the operator the well is equipped and a market is obtained within a reasonable time. We further said that it was implied in the very nature of the oil business that a reasonable time must intervene between the completion of drilling operations resulting in production and the ability to market and sell the product of the well. And termination of the lease was denied. But the latest case dealing with the question now before us is Tate v. Stanolind Oil & Gas Co., supra. There the action was instituted by landowners to quiet title to land on which one of the defendants claimed to hold a valid oil and gas lease. The lease was executed on October 27, 1937. It provided in the habendum clause that it should remain in full force and effect for a term of ten years and as long thereafter as oil or gas was produced. And it further provided that if the lessee should commence to drill a well within the term of the lease or any extension thereof, the lessee should have the right to drill such well to completion with reasonable diligence and dispatch and, if oil or gas should be found in paying quantities, the lease should continue and be in force with like effect as if the well had been completed within the term of years therein first mentioned. The primary term expired October 24, 1947. A gas well was completed on September 15, 1947, during the primary term. The well was capable of producing but no production was had during the primary term. The delay was occasioned by the necessity to obtain an allowable for the well and to difficulties in securing a purchaser for the gas. But the operators acted with diligence, and the sale of gas began in January, 1948. Taking into consideration both the habendum clause and the drilling provision contained in the lease, it was held that the lease had not terminated and the rights of the lessee had not become extinguished. But the court stated in categorical language too clear for misunderstanding that under a habendum clause of that kind, standing alone, production during the primary term as distinct from mere exploration or discovery of oil is required in order to effectuate an extension beyond such primary term. Here the habendum clause does stand alone; and during the primary term there was mere exploration and discovery of gas, without marketing. Moreover, there the court discussed Christianson v. Champlin Refining Co., to which reference has been made. The court said that in view of the two pertinent provisions contained in the lease involved in the Christianson case, the statements in that case respecting the operator having a reasonable time after discovery of oil or gas within which to obtain a market were correct. But the court further said with meticulous care that in order to avoid confusion, it was well to emphasize the point that such statements of this court would not be in harmony with the cases in Kansas if the lease had contained only the habendum clause which fixed without qualification the time within which oil or gas must be produced. The lease now before us does merely contain the habendum clause fixing without qualification the time within which oil or gas must be produced. Manifestly, this case falls within the general statement contained in Tate v. Stanolind Oil & Gas Co., supra, to the effect that under the law of Kansas a conveyance of this kind containing merely a habendum clause fixing the primary term for the production of oil or gas terminates the rights of the grantee and those holding under him are extinguished at the expiration of the primary term, unless oil or gas, or both, are

discovered and marketed prior to the expiration of such term.

■ Appellant attacks the Tate case. It says in substance that the attempt of the court in that case to follow the rule enunciated in the Christianson case and at the same time to exclude by dictum the type of case now before us results in confusion and fallacy; and that in view of the letter and spirit of Wilson v. Holm, supra, and Christianson v. Champlin Refining Co., supra, we should reject the decision in the Tate case as unsound dictum. We are not required to accept as conclusive evidence of local law of a state mere dictum in an opinion of the highest court of such state. Carroll v. Carroll, 16 How. 275, 286, 14 L.Ed. 936; New England Mutual Life Insurance Co. v. Mitchell, 4 Cir., 118 F.2d 414, certiorari denied, 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505. But the enunciation of local law is peculiarly the province of the highest court of the state. And in a case involving local law, a United States court should follow well considered dictum of the highest court of the state if it appears to be a clear and unequivocal exposition of the law and is not in conflict with other decisions of that court. Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610; Badger v. Hoidale, 8 Cir., 88 F.2d 208, 109 A.L.R. 798. Even though the part of the opinion in the Tate case now challenged may be dictum, it is clearly considered dictum as distinguished from mere comment in the nature of obiter; and therefore we accept it as the law of the state now in effect.

The judgment is Affirmed.