No. 40,549

HENRY E. SMITH, *Appellant*, v. E. E. HOLMES and MARY HOLMES, his wife, and the STATE HIGHWAY COMMISSION of the STATE OF KANSAS, *Appellees*.

(312 P. 2d 228)

Opinion filed June 8, 1957.

*William W. Dimmitt, Jr.,* of Topeka, argued the cause, and *Jacob A. Dickinson, David Prager* and *Sam A. Crow,* of Topeka, were with him on the briefs for appellant.

*John A. Bausch,* of Topeka, argued the cause, and *L. M. Ascough* and *C. K. Sayler,* of Topeka, were with him on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: This appeal involves the validity of a mineral lease entered into April 22, 1946, granting appellant lessee the right to quarry rock and other minerals for a primary term of five years "and as long thereafter as production is had" from land owned by appellees who claimed the lease had expired because of nonproduction following the expiration of the primary term.

On April 5, 1955, the State Highway Commission of Kansas instituted eminent domain proceedings to condemn the land described in the mineral lease. Those proceedings are in nowise involved, and pursuant to the award of the appraisers the condemner deposited with the clerk of the district court the sum of $10,938 as damages and compensation for the land taken. Neither the landowners nor the condemner appealed from the award, but the lessee, who claimed an interest in the land appropriated under the mineral lease, perfected his appeal to the district court. Thereafter, the landowners filed their motion to withdraw the total award, to which the lessee filed an answer alleging that the land taken was subject to the terms of the mineral lease and that he was entitled to share in the proceeds of the award. In their reply the landowners denied the validity of the mineral lease and alleged it had expired by reason of nonproduction. With the issues thus framed trial was had by the court. Judgment was rendered in favor of the landowners upon the finding that the mineral lease had expired by reason of nonproduction following the expiration of the primary term; the mineral lease was ordered canceled, and full payment of the award was directed to be made to the landowners. Following the overruling of his motion for a new trial, the lessee appealed.

The provisions of the mineral lease giving rise to this controversy, read:

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as production is had from said land by the said Lessee or assigns.

"In further consideration, Lessee agrees to pay Lessor, or to Lessor's credit at the Guaranty State Bank of Topeka, Kansas, or its legal successors, the sum of Five Cents (5¢) per ton for all stone quarried and a like amount for all stone by-products, coal, clay, etc., mined on said land, and in the event that Lessee fails to produce sufficiently so that the royalties amount to $100.00 in one year, then and in that event, Lessee agrees to pay Lessors the sum of $100.00 as a rental. Said royalty payments shall be due and payable quarterly from the time that operations begin."

Following the execution of the lease in April, 1946, the lessee moved rock quarrying equipment to the leased land and commenced production. As production was never sufficient in any one year to require the payment of $100 as royalty at 5¢ per ton, the lessee tendered and the landowners accepted minimum rental payments of $100 for each year of the primary term of the lease. After the expiration of the primary term on April 22, 1951, the lessee tendered and the landowners accepted a minimum rental payment of $100 on April 18, 1952, which both parties concede extended the lease to April 22, 1952. The lessee did not personally produce the lease following the expiration of the primary term but sublet the rock quarry and equipment in 1952 and again in 1953 to different operators and rock was produced and crushed by each, which was "stockpiled" on the premises and sold in 1953 and 1954. Royalty from such sales was included in the minimum rental payment of $100 tendered by the lessee to the landowners in 1953 and 1954, however, the landowners refused to accept all tenders of minimum rental payments for the terms ending April, 1953, 1954 and 1955. The lessee testified that the last quarrying operations were had in the late summer of 1953—more than 18 months prior to the institution of proceedings to condemn the land in April, 1955.

The lessee principally contends the district court erred in its construction of the lease that nonproduction following expiration of the primary term effected its termination. He asserts that whether he produced the lease after April 22, 1951, was unimportant, and argues "that where as here, the terms of the lease as a whole, together with the acts of the parties, show that it was the intention to accept a sum of money in lieu of development, even after the primary term, failure to continuously develop will not work a forfeiture!"

Neither party contends the provisions of the lease are ambiguous, consequently, the rule with respect to the binding effect of express terms of a contract as applied in *Anderson v. Rexroad,* 175 Kan. 676, 266 P. 2d 320, is applicable here. There it was said:

". . . The established rule is that the intention of the parties and the meaning of a contract are to be deduced from the instrument where its terms are plain and unambiguous; that when the language is clear and unequivocal the meaning must be determined by its contents alone; that words cannot be read into a contract which import an intent wholly unexpressed when it was executed; and that the court may not make an agreement for the parties which they did not make for themselves (See West's Kansas Digest, Contracts, § 143; Hatcher's Kansas Digest [Rev. Ed.], Contracts, § 40). . . ." (l. c. 679.)

When analyzed, the terms of the quoted provisions of the lease are express, clear and unequivocal, and we find nothing elsewhere in the lease conflicting with them. It follows as a logical result that the language used in such provisions must be given its plain and ordinary meaning without resort to further rules of construction. When this is done, we conclude it means exactly what it says, *i. e.,* that in the event the lessee *fails to produce sufficiently* so that the royalties amount to $100 in one year, then and in that event, the lessee agrees to pay the lessor the sum of $100 as rental, and, that the lease was to remain in force for a term of five years *and as long thereafter as production is had from said lands.*

It is well settled in this state that the law applicable to oil and gas leases applies with equal force to mineral leases of the character here under consideration (*Ratcliff v. Guoinlock,* 136 Kan. 149, 12 P. 2d 798; *Meeds v. Wells,* 146 Kan. 609, 73 P. 2d 12; *Wilson v. Holm,* 164 Kan. 229, 236, 188 P. 2d 899). In *Ratcliff v. Guoinlock,* supra, it was held:

"Where a lease of real estate for the production of clay contained the following clause:

" 'It is agreed that this lease shall remain in force for a term of one year from this date and as long thereafter as clays or earths are mined and produced from said lands by lessee as hereinafter provided,'

there must be actual production of clay within the year in order to extend the term of the lease. Mere exploratory activity is not sufficient."

In the opinion it was said:

". . . This court has held that in leases for the purpose of producing oil or gas, where there was a clause in the lease similar to the one under consideration here, it was necessary that there should be actual production of oil and gas, not merely exploration activities in order to extend the term of the lease. (See *Howerton v. Gas Co.,* 81 Kan. 553, 106 Pac. 47; *Alford v.*

*Dennis,* 102 Kan. 403, 170 Pac. 1005; *Webb v. Croft,* 120 Kan. 654, 244 Pac. 1033.)

"There appears to be no good reason why there should be a different rule where the lease contains the same provision but is for the production of clay." (l. c. 152.)

The provision dealing with the payment of royalties at 5¢ per ton and of a minimum rental payment in the event of insufficiency of production, if not expressly, then by implication, covenants for the reasonable development of the lease during the primary term (*Webb v. Croft,* 120 Kan. 654, 244 Pac. 1033; *Hinshaw v. Smith,* 131 Kan. 351, 291 Pac. 774; *Christiansen v. Virginia Drilling Co.,* 170 Kan. 355, 226 P. 2d 263) since it was expressly provided that if the lessee *fails to produce sufficiently in any one year* to require a royalty payment of $100, the lessee was to pay the landowners $100 as rental. But, no provision was made for a minimum rental payment in the event of insufficiency of production following the expiration of the primary term—on the contrary, it was expressly provided that the lease continue as long thereafter as *production* was had. Clearly, that provision contemplated actual continuous production to extend the lease, otherwise the phrase "as long thereafter as production *is* had" becomes meaningless. The purpose of the "thereafter" clause was to prescribe conditions which must exist at the end of the primary term and continue thereafter, and it required that *production* be had from the land to extend the lease (*Tate v. Stanolind Oil & Gas Co.,* 172 Kan. 351, 354, 240 P. 2d 465; *Baker v. Huffman,* 176 Kan. 554, 557, 271 P. 2d 276). No rock was quarried after the late summer of 1953 and the lease terminated when production ceased at that time. The effect of lessee's contention would be to disregard the plain and unequivocal terms of the lease that it continue as long as production was had from the land and would permit him to hold the land in perpetuity by an annual minimum rental payment of $100. This construction of the lease would do violence to its plain and unambiguous terms and amount to a rewriting of the lease by the court.

It would serve no useful purpose to detail the evidence with respect to the cessation of production by the lessee or his assigns, but suffice it to say there was substantial competent evidence to support the district court's finding that there was no production of the lease after late summer of 1953, and for the years 1954 and 1955. Since the five year primary term of the lease had expired and inasmuch as it was to continue as long thereafter as production was had from

the land, the judgment canceling the lease, under the conditions and circumstances presented by this record, was fully justified (*Warner v. Oil & Gas Co.*, 114 Kan. 118, 217 Pac. 288; *Bundy v. Ahrens*, 115 Kan. 818, 224 Pac. 899; *Tate v. Stanolind Oil & Gas Co.*, supra), and the district court did not err in ordering full payment of the award to the landowners.

The judgment is affirmed.