No. 44,641

M. M. Williams and Wayne Coulson, Trustees, *Appellants* and *Cross-Appellees. v.* Safeway Stores, Incorporated, a Corporation, *Appellee* and *Cross-Appellant,* and Hill Bros. Distributors, Inc., a Corporation, *Appellee.*

(424 P. 2d 541)

Opinion filed March 4, 1967.

*Robert T. Cornwell,* of Wichita, argued the cause, and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Gerrit H. Wormhoudt, Philip· Kassebaum, John E. Rees, Williard B. Thompson,· David W. Buxton, John T. Conlee, John Prather, Richard I. Stephenson* and *Hugo T. Wedell,* all of Wichita, were with him on the brief for Appellants and Cross-Appellees.

*Darrel D. Kellogg,* of Wichita, argued the cause, and *W. A. Kahrs, Robert H. Nelson, H. W. Fanning, Richard C. Hite, Roger Sherwood* and *Richard L. Honeyman,* all of Wichita, were with him on the brief for Safeway Stores, Incorporated, Appellee and Cross-Appellant.

The opinion of the court was delivered by

FROMME, J.: This action was brought to cancel a forty year written lease on a commercial building in Wichita, Kansas. The lessee had operated a grocery on the premises and later subleased the premises to be operated as a shoe store. The lessor sought cancellation on the ground the lease was ambiguous and subject to an implied covenant which restricted the subleasing.

All parties appeared and filed pleadings. A pre-trial conference was held. At the pre-trial conference the petition was amended to substitute Forest Henderson in place of Wayne Coulson as trustee and plaintiff. Pertinent written instruments were admitted in evidence, witnesses were identified and a brief summary of their anticipated testimony was included in the pre-trial order. Other exhibits relating to negotiations between the parties before execution of the lease and letters between the parties after the controversy arose were excluded at first but later admitted in evidence. The court ruled no further oral testimony was necessary and entered summary judgment in favor of the defendants. The plaintiffs have appealed.

The plaintiff-trustees are the successors in interest to the original lessors, Howard T. Fleeson and Katherine M. Fleeson.

The defendant, Safeway Stores, Incorporated, is lessee. Safeway subleased the premises to defendant, Hill Bros. Distributors, Inc. and they are now in possession of the premises under a sublease.

The plaintiffs will be referred to as lessors. They contend on appeal (1) the lease is ambiguous by reason of a conflict between the assignment clause and the percentage rental clause, (2) the correct interpretation of the lease is that the assignment clause is subject to an implied restriction against assignment for use for purposes which would not yield a percentage rental comparable to that paid by lessee. They assert the restriction is implied in the lease, it was violated by subleasing to Hill Bros. and the lease and sublease should be cancelled.

Although the defendants have filed a cross-appeal from that portion of the order admitting certain exhibits they do not seek to alter the judgment. The purpose of the cross-appeal is to limit the record to be considered on appeal.

The facts leading up to the present controversy are not in substantial dispute. In 1941 Safeway Stores, Incorporated, owned a

tract at 21st and Jackson Avenue in Wichita and were constructing a building thereon. They will be referred to as Safeway and as lessee. Safeway completed the building, sold it to Howard T. Fleeson and Katherine M. Fleeson for $22,067.00 and contemporaneously therewith took a lease back for a term of forty years. This lease is now in controversy.

The lease, omitting the designation of parties, the signatures, the acknowledgments and other portions not essential to the question presented, reads:

\* \* \*

"WITNESSETH: That in consideration of the mutual covenants, promises and agreements herein contained, said parties hereto do hereby covenant, promise and agree to and with each other as follows:

"FIRST: Said party of the first part does hereby demise and lease to said party of the second part the following described real property, situated in the city of Wichita, County of Sedgwick, State of Kansas, designated as 21st Street and Jackson Avenue, to-wit:

( *Legal description omitted.* )

"Together with the building constructed thereon.

"To HAVE AND TO HOLD the above described premises, together with all the tenements, hereditaments, appurtenances and easements thereunto belonging, at the rental and upon the terms and conditions herein stated, for the term of forty (40) - - - - years, commencing with the 1st day of August, 1941, and extending to and including the 31st day of July, 1981.

"SECOND: Said lessee does hereby agree to pay to said lessor, as the rent of said leased premises, the sum of Eighty-two and $^{50}/_{100}$ - - - - dollars ($82.50) on the first day of each and every calendar month during said term. Said payments shall be made by checks payable to said Howard T. Fleeson, and mailed to him at First National Bank Building, Wichita, Kansas.

\* \* \*

"THIRD: Lessee agrees that during said term it will pay all charges for electricity, water, gas and telephone service used on said leased premises. Lessee further agrees to pay all taxes and assessments upon said real property, and upon the buildings and improvements thereon, which are assessed or become payable during the term hereof, it being provided, however, that taxes assessed during the term, but payable in whole or in installments after the termination of this lease, shall be adjusted and prorated and that lessor shall pay the prorated share thereof for the period subsequent to the term, and that lessee shall pay the prorated share thereof for the term of this lease. Lessee shall have the right to place or install in said leased premises such fixtures and equipment as it shall deem desirable for the conduct of business therein, including a water cooling tower on the roof thereof, and to paint the building hereby leased such colors as it may elect, and to paint and erect or authorize signs in and over said demised premises and on the outside of said building. Lessor agrees that no person other than lessee, or its subtenants, or persons authorized by lessee, shall be permitted to place or maintain any sign on or

above the premises hereby demised. At any time during the term of this lease or any extension or renewal thereof or any holding over by lessee or at the termination of this lease, or any extension or renewal thereof, or any holding over by lessee, lessee may remove from said leased premises all personal property and fixtures which were placed by it or any subtenant or any predecessor in interest on said premises (even though placed prior to the commencement of said term), including, but not being limited to, store fixtures, fans, lighting fixtures, screens, awnings, refrigeration equipment and machinery, and all other things installed by lessee at its own expense, or in which it or any subtenant has any interest, whether nailed or screwed or otherwise fastened to the premises, and may obliterate any signs or color effects installed by it. Any damage caused to demised premises by the removal of such property shall be repaired by lessee at its own expense. Lessor agrees not to permit any other premises owned or controlled by lessor and situated within fifty (50) feet of demised premises to be used for or occupied by any business dealing in or which shall keep in stock or sell any staple or fancy groceries, or meats, or fruits, or vegetables, or bakery goods.

"FOURTH: Lessee agrees that lessor shall be under no obligation to make any repairs to demised premises, or to the building or improvements situated thereon during the term of this lease. Lessor agrees that lessee may make such repairs, alterations and improvements in and to demised premises and the improvements thereon, as it may deem desirable for its use thereof. At the expiration or termination of this lease, or any extension or renewal thereof, lessee shall leave said premises in good condition, allowance being made for ordinary wear and tear and damage by fire, or by earthquake, or by the elements, or by tornado, or by act of God, being excepted. Lessor reserves the right to enter upon leased premises at any time during business hours to inspect the same. Lessee agrees that it will indemnify and save the lessor harmless from any and all liability, damage, expense, cause of action, suits, claims, or judgments arising from injury to person or property on the demised premises, or upon the adjoining streets and sidewalks which arise out of the act, failure to act, or negligence of lessee, its agents or employees. Lessee agrees to keep and maintain said premises in good repair during the term of this lease.

"FIFTH: Lessee shall have the right to assign or transfer this lease or to underlease or sublet the whole or any part of said leased premises. Should lessee assign this lease it shall nevertheless remain liable as a surety to lessor for full payment of the rent according to the terms of this lease.

\* \* \*

"NINTH: Lessee agrees that it will, at all times during the term of this lease, at its expense, keep in effect upon the building hereby demised, fire insurance written by a responsible insurance company or insurance companies authorized to do an insurance business in the State in which demised premises are located, in an amount equal to not less than eighty per centum (80%) of the insurable value of said building, said policy or policies of insurance to provide that payment for any losses covered under or by said policy or policies of insurance shall be made to said lessor and/or said lessee as their interests may appear.

"ELEVENTH: Lessee agrees that it will, with reasonable diligence, complete the construction of a building and paving of a parking lot upon the premises hereby demised substantially in accordance with the contract heretofore entered into, and that it will pay all bills for labor and material used in said construction work. Lessee agrees that it will not permit any mechanics' materialmen's, or other liens to stand against demised premises for work or materials furnished lessee, it being provided, however, that lessee shall have the right to contest the validity of any such lien or claim, but upon a final determination of the validity thereof, lessee shall immediately pay any judgment or decree rendered against the lessee, with all proper costs and charges and shall cause any such lien to be released of record without cost to lessor.

\* \* \*

"TWELFTH: Lessor agrees that lessee may subject to the following conditions, at the option of lessee, terminate this lease at any time after the expiration of the first year of the term hereof. In the event lessee desires to exercise this option and to terminate this lease, it shall give written notice to lessor of its intention to so terminate this lease, and as a part of such notice shall offer to purchase from lessor the property hereby demised and the building and improvements situated thereon for an amount equal to the purchase price paid by the lessor named herein for said property, (which purchase price shall be deemed to be the sum of twenty-two thousand sixty-seven dollars ($22,067.00), less four hundred sixty dollars - - - - ($460.00) for each year (prorated and adjusted for any fractional year at the end of said period) which has elapsed since the commencement of the term hereof. Should written notice of the acceptance of such offer to purchase, signed by lessor, not be received by lessee within twenty (20) days after the date of its notice to lessor, said offer to purchase shall be of no effect and this lease shall terminate and end at the expiration of ninety (90) days after the date of its notice of termination to lessor. Should lessor, however, accept said offer of purchase made by lessee within the time and in the manner above provided, lessor shall open or cause an escrow to be opened with a bank, trust company or title company and shall deposit in said escrow a properly executed grant deed conveying said real property to lessee, or its nominee, free and clear of all defects or encumbrances, except mortgages or trust deeds for a principal amount, not exceeding the purchase price to be paid for said property then of record against said property, which mortgages or trust deeds shall have either been approved in writing by lessee or shall contain a provision permitting the payment of the entire balance of principal and interest at any time upon not more than ninety (90) days' notice, and the payment of a penalty not in excess of two per centum (2%) of the unpaid principal amount thereof, and shall instruct such bank, trust company or title company with which said escrow is opened, to deliver the same to lessee, or its nominee, upon receipt by said bank, trust company or title company of the purchase price to be paid for said property by lessee, computed as hereinabove provided for.

"THIRTEENTH: In addition to the rental provided for in paragraph SECOND hereof, lessee agrees that it will pay to lessors monthly in advance, the sum of

thirty-eight and 33/100 dollars ($38.33) to cover depreciation on the building situated upon demised premises.

"FOURTEENTH: Said lessee agrees that it will, during the term of this lease, keep accurate records of all sales made in leased premises and in the event the sales made in said leased premises in any year during the term hereof (each year for the purpose hereof to commence January 1 and expire December 31) exceed the sum of Two Hundred Seven Thousand Dollars ($207,-000.00), it will then within thirty days after the end of said one year period pay to lessors as additional rent for said premises for said one year period a sum equal to three-fourths (¾) of one per centum (1%) of all sales made in said leased premises during said period in excess of Two Hundred Seven Thousand Dollars ($207,000.00). The word 'sales' as used herein shall not include transfers of merchandise from leased premises to other stores or warehouses of lessee or its affiliated companies nor shall it include any sales or other tax collected by lessee on sales made in said leased premises. The record of sales for any calendar year upon the leased premises shall be open to the lessor or to any certified public accountant selected by him. The provisions of this Paragraph shall apply to the remainder of the year 1941, the amount of $207,000.00 aforesaid being prorated and adjusted for the fractional year.

"SIXTEENTH: That each and all of the covenants, terms, agreements and obligations of this lease shall extend to and bind and inure to the benefit of the heirs, legatees, personal representatives and/or successors and/or assigns of said lessors, and to the successors and/or assigns of said lessee, respectively; and herein the singular number includes the plural and the masculine gender includes the feminine and neuter."

\* \* \*

Safeway operated a grocery store in this location from 1941 to 1959, inclusive. In January 1960 Safeway subleased the property to Hill Bros. Distributers, Inc. Included in this lease were four lots north of the store used for parking and certain personal property and fixtures in the building. This additional property was owned by Safeway.

This sublease was for an original term of ten years with an option to extend the term for two successive five year periods. Hill Bros. agreed to pay a base rental of $500.00 per month to Safeway. The sublease referred to the original lease and recited that it was subject to all terms and conditions thereof except the amount of base rental to be paid. It further recited that the sublease was to terminate at any time the original lease ended. The sublease contained a provision which limited the use of the premises to the retail sale and storage of footwear and accessories and prohibited the sublessee from conducting a grocery business therein.

Included in the sublease were provisions which obligated Safeway to pay real estate taxes and assessments and keep the building

insured. The air conditioning equipment and lighting fixtures were to remain the property of Safeway. Hill Bros. were to use and repair the same. The sublease contains a provision for rental based on percentage of sales in the premises similar to that set out in the fourteenth paragraph of the original lease. This rental was to be paid to the credit of lessors.

The guaranteed base rental in the original lease is $120.83 per month and consists of two separate items. As shown in the thirteenth paragraph of the lease Safeway agreed to pay $38.33 per month to cover depreciation on the building amortized over the forty year life of the lease. In the second paragraph of the lease Safeway agreed to pay $82.50 per month as a fixed return on the original investment. This guaranteed base rental amounts to $990.00 per year on an investment of $22,067.00. Safeway pays taxes, insurance costs and all repairs so the $120.83 base rental is net to the lessors.

During the nineteen years Safeway operated a grocery on the premises they paid over $52,000.00 in additional rentals to the lessors based upon gross sales in excess of $207,000.00 annually as provided in the fourteenth paragraph of the lease.

Since Hill Bros. have operated the shoe store in this location no rental based upon percentage of gross sales has been earned or paid. Safeway has paid the trustees the base rental of $120.83 per month. Hill Bros. have paid Safeway $500.00 per month under the sublease.

The trustees seek cancellation of the forty year lease alleging an implied restriction against assignment for use which would not yield a percentage rental comparable to that paid by Safeway. They would imply such a restriction based upon an alleged conflict between the assignment clause (fifth paragraph) and the percentage rental clause (fourteenth paragraph) of the lease.

The parties state this is the first time our court has been called upon to examine a lease with a provision for rental based upon a percentage of sales from leased premises. The same rules of construction and interpretation applicable to any ordinary lease apply to this type of lease. (See 170 A. L. R. 1113 and 38 A. L. R. 2d 1113.) Let us examine some of these pertinent rules of construction.

When a sale of premises and a lease thereof are part of a single transaction they may be read and considered together in deter-

mining the intention of the parties. (*Setchell v. Reed*, 153 Kan. 818, 113 P. 2d 1050; 17A C. J. S. Contracts § 298; 17 Am. Jur. 2d Contracts § 264.)

The only limitation on the common law right of a lessee to sublet the premises is that they cannot sublet to be used in a manner inconsistent with the terms of the original lease, or injurious to the premises. (*Leslie v. Sherman*, 157 Kan. 157, 139 P. 2d 133; 51 C. J. S. Landlord and Tenant § 31; 32 Am. Jur. Landlord and Tenant § 394.)

Kansas has placed no statutory restrictions on assignments of leases except when a tenancy is for a term of two years or less. (K. S. A. 58-2511.)

An express covenant on a given subject matter excludes the possibility of an implied covenant of a different or contradictory nature. (*Duvanel v. Sinclair Refining Co.*, 170 Kan. 483, 227 P. 2d 88; 21 C. J. S. Covenants § 14; 20 Am. Jur. 2d Covenants, Conditions, etc. § 12.)

Restrictions against assignment of a lease constitute prohibitions against the right of alienation. They are not favored by the courts and, absent statutory prohibitions, are strictly construed against the lessor. They are not extended by implication. (*Lawrence v. Cooper Independent Theatres*, 177 Kan. 125, 276 P. 2d 350; 51 C. J. S. Landlord and Tenant § 33; 32 Am. Landlord and Tenant § 397.)

When a contract is complete, unambiguous and free from uncertainty, parol evidence of prior or contemporaneous agreements or understanding, tending to vary or substitute a new and different contract for the one evidenced by the writing is inadmissible. (*Brown v. Beckerdite*, 174 Kan. 153, 254 P. 2d 308; 17A C. J. S. Contracts § 322; 17 Am. Jur. 2d Contracts § 260.)

When terms of a lease are plain and unambiguous the meaning must be determined by its contents alone and words cannot be read into the agreement which import an intent wholly unexpressed when it was executed. (*Borgen v. Wiglesworth*, 189 Kan. 261, 369 P. 2d 360; 17A C. J. S. Contracts § 321; 17 Am. Jur. 2d Contracts § 261.)

The petition alleges that Safeway was operating two competing grocery stores in the neighborhood at the time they discontinued the grocery at 21st and Jackson Avenue. One of these competing grocery stores was seven blocks away and the other was fifteen blocks distant. We find nothing in the lease restricting the lessee

Safeway from expanding its business to other locations. Neither do we find any express covenant in the lease requiring Safeway to operate a grocery business in this particular location.

The trustees contend the parties intended the premises to be used for a grocery store when the lease was executed. The sale and lease were all part of a single transaction and under *Setchell v. Reed,* supra, they may be considered together. The parties completed the transaction with the intention of lessee using the premises for a grocery business. The parties did not deem such intention of sufficient importance to mention the same in the written lease and they did not place a restriction on use in the lease.

In *Borgen v. Wiglesworth,* supra, the parties expressly stated in the lease the premises were to be used for car washing and servicing. A special building was constructed on the premises by the lessee. The lease prohibited use of the premises as a cafe or restaurant. The lessee discontinued the car wash business and remodeled the building in order to begin a "launderaide business." This court held the provision authorizing a specific use and describing the character of the premises was not a restriction on use. It described the original use, was descriptive only and was not a restriction on future use. The express prohibition on use as a cafe was held to negate an implied prohibition against other use.

In our present case the intention of the parties as to use of the premises was unexpressed in the lease. There was no express prohibition on use of the premises and it would appear under *Borgen* the original use intended whether implied or expressed is not to be considered a restriction on future use of the property.

The lessors state the provision for payment of rental based upon a percentage of gross sales from the premises was designed and inserted in the lease to protect them against inflation. They indicate that although the lease was assignable, it was assignable only for a use which would provide to lessors a comparable rental. The difficulty of accepting this argument is that the design of such a provision is to permit percentage rentals to fluctuate both up and down or to be discontinued when the gross sales from the premises are less than the stated sum. If this court determines an implied covenant in the lease existed which required payment of comparable rentals we say, in effect, it was intended as a fixed rental requiring comparable sales. The effect would be to change the percentage of income rental into a fixed rental based upon past sales experience.

A second difficulty in accepting lessors' theory arises when we attempt to define the term *"percentage rental comparable to that paid by lessee."* How would we arrive at such a figure in the present case? During the first six months of operation no such rental was payable by lessee. $1,826.88 per year was paid on an average during the next eleven years. This figure jumped to an average of $5,584.02 during the next five years, then dropped to $2,889.98 and was $1,362.73 in the final year of operation. If this covenant is implied in the lease it would impair the expressed right to assign set out in the fifth paragraph. Safeway could not determine what figure amounted to a comparable rental. Neither could Safeway look into the future to determine which prospective sublessee would have gross sales from the premises to produce the required percentage rental. It would be unreasonable and undesirable to imply such a covenant when it would be vague, uncertain, impracticable and impossible to determine.

The implied covenant which lessors seek to have enforced by cancellation of the lease is contradictory to the provisions of the fifth paragraph of the lease which provides for full rights to assign and sublet the premises. An express covenant on a given subject matter excludes the possibility of an implied covenant of a different or contradictory nature. (*Duvanel v. Sinclair Refining Co.*, supra.)

The implied covenant urged by lessors constitutes a restriction against an expressed covenant permitting assignment of a lease. Such restrictions constitute prohibitions against the right of alienation and are strictly construed against the lessor. They are not extended by implication. (*Lawrence v. Cooper Independent Theatres*, supra.)

In *Dickey v. Philadelphia Minit-Man Corp.*, 377 Pa. 549, 105 A. 2d 580, the lessor sought possession of the premises on the ground that lessee had defaulted in the lease when he discontinued his business of washing automobiles. The lease provided for a percentage rental plus a guaranteed monthly rental and provided the premises were to be occupied for the business of washing and cleaning automobiles and no other purpose. The Pennsylvania court refused to imply an obligation on the lessee to use the premises for a particular purpose or to produce a comparable rental and said:

"If an implied covenant, as claimed by the plaintiff, should be held to arise in such cases what would be the extent of restriction thereby imposed upon the lessee? Would it extend to each and every act on his part that might serve to reduce the extent of his business and thereby the percentage rental

based thereon? Would it forbid him, for example, if operating a retail store, from keeping it open for a fewer number of hours each day than formerly? Would it forbid him dismissing salesmen whereby his business might be reduced in volume? Would it forbid him from discontinuing any department of his business even though he found it to be operating at a loss? It would obviously be quite unreasonable and wholly undesirable to imply an obligation that would necessarily be vague, uncertain and generally impracticable."

( See *Food Fair v. Blumberg,* 234 Md. 521, 200 A. 2d 166; *Riverside Rlty. Co. v. National Food Stores of La., Inc.,* 174 So. 2d 229 [La. App. Ct. 1965.].)

Each case appears to depend largely upon its own facts. In order to find an implied covenant in a lease a court must first determine the lease is ambiguous or that a conflict exists between two covenants expressed in the lease. In our present case lessors state that there is a conflict between the assignment clause (fifth paragraph) and the percentage rental clause (fourteenth paragraph) of the lease. They indicate that while the assignment clause provides for assignment or subleasing, the percentage rental clause contemplates a rental comparable to that paid on the lessee's grocery business, therefore conflict exists. The fifth paragraph provides lessee shall have a right to assign or sublet the whole or any part of the premises without restriction. The fourteenth paragraph of the lease provides a general formula for arriving at a rental based upon *"sales made in said leased premises."* Transfers of merchandise to other stores or warehouses of lessee are excluded from such sales. Although this exclusion from sales is limited to sales of the lessee we can consider this in conjunction with the fifth paragraph which authorizes a sublease and assignment and with the third paragraph which authorizes the lessee *"at any time during the term"* to remove from the premises all personal property and fixtures. When so considered the reasonable construction based upon the apparent intent of parties would be to exclude payment of percentage rental on the value of merchandise removed from the premises in event the business was discontinued. We do not find a conflict between the fifth and the fourteenth paragraphs. They appear to be in harmony with each other.

Other provisions of this lease appear to be in harmony on the matter of unlimited subleasing. The third paragraph of the lease authorizes the lessee to remove all fixtures and personal property at any time during the term of the lease and this right is extended to items placed on the premises by a subtenant. In the sixteenth

paragraph of the lease all terms, agreements and obligations are extended to the assigns of both parties, including the lessee. When a lease authorizes the tenant to remove all fixtures and personal property at anytime during the term of the lease this would indicate lessee had a right to discontinue his business before the end of the lease.

The twelfth paragraph of the lease gives the lessee the option to terminate the lease under certain conditions but assures the lessors of a return of their original investment less depreciation by requiring lessee to repurchase the premises.

The fourteenth paragraph does not base the percentage rental upon sales of groceries or upon the number of specific units of merchandise sold. The rental provided is based upon *sales made in the leased premises* in any year. This could be applied to any retail business.

When the sublease was executed it required the sublessee to comply with all provisions of the original lease and incorporated an identical provision for payment of rental based upon the percentage of sales in excess of $207,000.00. If the present sublessee is able to increase his sales it is possible that additional percentage rentals may be earned and paid in the future.

Lessors complain of the inequity in permitting Safeway to collect $500.00 per month under the sublease and to pay only $120.83 per month to lessors. On the surface this would appear to be profiteering on the lease but let us examine the facts. The lessee originally owned this property. It still owns all fixtures and other personal property including lighting fixtures and air conditioning equipment which it installed in the premises. When the real estate was originally sold the forty year lease was taken contemporaneously with the sale. The lease provided for a guaranteed minimum rental which would return purchasers' investment in forty years and would provide a minimum additional rental of four and one-half percent on the original investment. Lessee agreed to pay all taxes, insurance and repairs on the premises. Lessee was obligated to install its own fixtures, air conditioning, light fixtures, ownings and machinery. The minimum guaranteed rental of $120.83 per month under the lease was to be free of any expense.

Under the sublease the $500.00 per month is subject to payment of all real estate taxes, assessments and cost of insurance on the building. In addition the lessee would be entitled to some rental

on its property included in the sublease which is not owned by lessors. This property included four lots used for customer parking and other substantial items of personal property.

Adding the total net rentals received by the lessors since 1941 it would appear they have received more than $87,000.00 on their original investment of $22,067.00. Under all the circumstances we are not prepared to say that this is an unfair rental or that inequity has resulted from the original transaction between the parties. Regardless of whether a percentage rental based on gross sales is earned in the future a base rental is guaranteed to lessors of approximately four and one-half percent on their original investment.

The final contention of lessors relates to the eighteenth paragraph of the sublease which provides:

"EIGHTEENTH: Sublessee agrees that the leased premises shall be used for the retail sale and storage of general merchandise, footwear and accessories to footwear, and further agrees that the same or any part thereof shall not be used for conducting a grocery business or any phase of a grocery business."

Lessors state that to allow the lessee to place such a restriction against use for a grocery store was an act of bad faith and in violation of the use of the premises contemplated by the parties.

As we have previously noted the only limitations on the common law right of a lessee to sublet are applied (1) so the premises cannot be sublet to be used in a manner inconsistent with the terms of the original lease and (2) so the premises cannot be sublet for use in a manner injurious to the premises. (*Leslie v. Sherman,* supra.) No contention is made that limiting the use to retail sales of footwear would be injurious to the premises, and we find nothing in the sublease inconsistent with the express terms of the original lease. Safeway had no obligation to continue using the premises as a grocery store. It had a right to sublease for the sale of footwear. If lessee had the right to sublease for the sale of footwear it would have a corresponding right to require the sublessee to use the premises solely for the sale of footwear and not for sale of groceries. Footwear and groceries not not generally considered complementary items sold by one store. Restricting the use of the building to sale of footwear and accessories and prohibiting the sale of groceries would not affect the normal gross sales of the sublessee. No bad faith on the part of the lessee is indicated.

The present lease covered the agreement of the parties in detail. It is reasonable to assume that any agreement to restrict lessee's

right to sublease would have been set forth in the lease. However, the trustees have never contended that the lease restricted lessee to use the premises for the grocery business.

The intention of the parties and the meaning of a contract are to be deduced from the instrument when its terms are plain and unambiguous; when the language is clear and unequivocal the meaning must be determined by its contents alone. Words cannot be read into a contract which import an intent wholly unexpressed when it was drawn and executed. The court may not make an agreement for the parties which they did not make themselves. (*Smith v. Holmes,* 181 Kan. 438, 312 P. 2d 228; *Borgen v. Wiglesworth,* supra.)

In view of our decision it is not necessary for this court to explore the matter presented on cross-appeal. Suffice it to say it does not appear for what purpose these exhibits were admitted in evidence. Since no implied covenant was found to exist they were not considered by the trial court to vary or contradict the terms of the written lease. Exhibits six through twelve related to negotiations of the parties leading to the execution of the deed and the lease and could not properly be considered to vary or contradict the terms of the written instruments. (*Smith v. Holmes,* supra; *Borgen v. Wiglesworth,* supra.)

The terms of the present lease appear clear and unambiguous. No covenant can be implied in the lease to restrict the lessee's express right to sublease except those existing at common law. The common law restrictions prevent a lessee from subleasing to be used in a manner inconsistent with the terms of the original lease, or in a manner injurious to the premises. The sublease did not permit the premises to be used in a manner inconsistent with the terms of the original lease, or in a manner injurious to the premises.

Judgment is affirmed.

FATZER, SCHROEDER and FONTRON, JJ., dissent.