**TRUE OIL COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 79–2316.

United States Court of Appeals, Tenth Circuit.

Argued Aug. 28, 1981.

Decided Nov. 3, 1981.

Andrew L. Breffeilh, Casper, Wyo. (Robert Stanley Lowe, Casper, Wyo., with him on the brief), for petitioner.

Jerome M. Feit, Deputy Sol., Washington, D.C. (Robert R. Nordhaus, General Counsel, George H. Williams, Jr., and Thomas E. Hirsch, III, Washington, D.C., with him on the brief), for respondent.

Before SETH and BREITENSTEIN, Circuit Judges and KUNZIG,* Judge.

BREITENSTEIN, Circuit Judge.

True Oil Company petitions for review of an order made by respondent, Federal Energy Regulatory Commission. The order reversed a determination by the Montana Board of Oil and Gas Conservation that a certain True well had tapped a new onshore reservoir as defined in the Natural Gas

---

* Robert L. Kunzig, Judge of the U.S. Court of Claims sitting by designation.

Policy Act of 1978, 15 U.S.C. § 3301 et seq., and thereby discovered gas eligible for higher ceiling prices. We grant the petition for review.

The case is unique. The True application was filed only a few months after the Act became effective. Both the Commission and the gas producers were faced with a complex statute which required prompt and previously unplanned actions. The resulting confusion is not surprising. We recognize the procedural complications which have arisen but we are convinced that in the circumstances presented we should rest our decision on the merits.

The basic question is whether the production in dispute is "new natural gas." This depends on the so-called "behind-the-pipe" exclusion contained in 15 U.S.C. § 3312(c)(1)(C)(ii) which says that the production is not "new natural gas":

"if—

I—the reservoir was penetrated before April 20, 1977, by an old well from which natural gas or crude oil was produced in commercial quantities (whether or not such production was from such reservoir); and

II—natural gas could have been produced in commercial quantities from such reservoir through such old well before April 20, 1977."

Section 3413(a)(1) and (c)(1) authorize a state agency having regulatory jurisdiction with respect to the production of natural gas to determine the "new natural gas" question subject to Commission review, § 3413(b). The Commission may reverse on a finding that "such determination is not supported by substantial evidence in the record upon which such determination was made." § 3413(b)(1)(A). Under § 3416(a)(4) a court of appeals may review Commission action and "affirm, modify, or set aside such order in whole or in part."

The True application covered its Burlington Northern well # 42–1, which produced both oil and gas from the Blue Hill Field, Red River Reservoir in Montana. Before April 20, 1977, this reservoir had not been penetrated by any other well. In oil and gas parlance the Burlington well was a "wildcat." On July 6, 1976, True contracted to sell gas from the well to Montana Dakota Utilities. The "spud date" was August 30, 1976. The completion date of the well was December 27, 1976. During the testing of the well, December, 1976—March, 1977, 400 barrels of oil were produced and sold, and 350 Mcf of gas was vented or flared. After testing, the well was "shut in" for the installation of surface production equipment, gas gathering, and pipelines to transport the gas to market. Commercial production and sales of gas began on May 7, 1977.

In March, 1977, True applied to the jurisdictional administrative agency, the Montana Board of Oil and Gas Conservation, seeking a determination that the production was "new natural gas." On May 8, 1979, Montana granted the True application and noted that it was not opposed.

On May 14, 1979, the Commission received notice of the Montana decision. The Commission may reverse a State agency determination if it is not supported by substantial evidence and notice of Commission action is given within 45 days from the date on which the Commission received notice of the state determination. § 3413(b)(1) and (3). On June 28, 1979, the 45th day, the Commission made its decision reversing the Montana agency. It gave notice by posting on a Washington bulletin board and mailing a copy to True on June 28. The action was published in the Federal Register on July 9, 1979. Apparently True did not receive the letter until July 5.

True says that the 45-day requirement is jurisdictional. The Commission says that it satisfied the requirement by posting the notice and mailing the letter. We seriously doubt the sufficiency of a notice posted in Washington and mailed to a Wyoming company. In the light of the record presented and the lack of definition of "notice" in the statute or legislative history, we decline to decide the point and turn to the merits.

The preliminary determination of the Commission applied the two-pronged test of

§ 3312(c)(1)(C)(ii). The first test is based on production before April 20, 1977, of oil or gas in commercial quantities. In holding that this portion of the test was satisfied, the Commission relied on the sale of oil before that date. Oil differs from gas in that it can be stored and trucked away. The second test is that gas could have been produced in commercial quantities before the controlling date. Sale of gas requires surface equipment to remove impurities and pipelines for transportation to market. The Commission apparently relied on the flaring of gas to show the required production. The flaring of gas is not commercial sale. The Commission seems to have acted on physical availability. Flaring may show availability. Commercial production requires facilities to get the gas to market.

On August 14, 1979, by its Order No. GP 79–68, the Commission reaffirmed its position that the statutory language referred to "physical capability." Later at an informal conference, Commission staff told True representatives that the Commission was considering an amendment of the "behind-the-pipe" exclusion and that such action could probably not occur within the required 120 days after notice of the preliminary finding. See § 3413(b)(1)(B). Under protest True filed a record supplement.

On October 26, 1979, the Commission issued its final order reversing the Montana decision as to the Burlington Northern well. With regard to the second prong of the test, the Commission found that the well not only had the physical capability of production but also that such production was economic. That Order, No. GP 79–38 is now under review.

The Commission filed a motion to remand the case to it. The Commission noted that True's application and action thereon came when the 1978 Act had been in effect but for only a short time. The Commission recognized that "ongoing study was necessary before a more finely tuned test could be fashioned." Br. p. 23. The Commission gave True an opportunity to start over and submit its application under the amended test. The Commission argues that True's failure to file a new application is a failure to exhaust available administrative remedies and hence a remand is proper.

The remand motion, together with True's response, was considered by another panel of this court and denied without permission for resubmission of the motion upon consideration of the merits. In the circumstances presented, we accept the action of the other panel denying the remand motion.

While the case has been pending here, True moved for supplementation of the record. The other panel ordered the respondent Commission "to forthwith file those internal predecisional documents which Respondent claims are privileged." The documents were to be filed under seal "pending a determination by the hearing panel when this case is set for argument." True requests that we examine the documents and the Commission objects. The sealed material consists of seven bulky envelopes purporting to contain 41 documents "withheld in their entirety" and 24 documents "withheld in part." Because the material was sealed, it was not available for analysis and presentation by True in its brief. We decline to open the sealed envelopes and examine the material because the record not sealed is adequate for disposition of the case.

At issue is the two-pronged test of § 3312(c)(1)(C)(ii). The production and sale of oil before April 20, 1977, suffice to sustain the Commission's holding on this element of the statutory exclusion. The second element refers to the production of gas "in commercial quantities from such reservoir through such old well before April 20, 1977." Commercial sales of gas began on May 7, 1977, when treatment, gathering, and pipeline facilities were completed. The critical issue is whether the gas flared before April 20 was gas "produced in commercial quantities."

The meaning of the term "production" as applied to oil and gas varies under state law. *Compare Panhandle Eastern Pipe Line Co. v. Isaacson*, 10 Cir., 255 F.2d 669 with *Home Royalty Association v. Stone*, 10 Cir., 199 F.2d 650; the first applies the law

of Oklahoma and the second the law of Kansas. We are concerned with federal law. It is significant that the phrase under scrutiny is "produced in commercial quantities," not just "produced." We agree with the Fifth Circuit that the determination of production in commercial quantities is economic in nature. *Pennzoil Co. v. Federal Energy Regulatory Commission*, 5 Cir., 645 F.2d 360, 372–373, n. 23. In the economic sense the phrase requires a capability to market. Such interpretation also makes practical sense.

We have spoken of wells as "capable of producing natural gas in commercial quantities" before the completion of marketing facilities. *Statex Petroleum v. Petroleum, Inc.*, 10 Cir., 308 F.2d 815, 816. But, the act in question here speaks not in terms of capability but of the fact of production. "Production in commercial quantities" requires means of transportation of the product from the producer to the consumer. Otherwise, the quantities are not commercial in the plain sense of the word. The record before us does not show any improper delay by True in getting the gas to market. We are not concerned with what the situation might be if such delay was established.

Substantial evidence supports the determination of the Montana Board of Oil and Gas Conservation that gas from Burlington Northern well # 42–1 qualified for classification as new natural gas. The Commission Order, reversing the determination of the Montana Board of Oil and Gas Conservation, Docket No. GP 79–38, is set aside.